## IN RE LEASING OF STATE LANDS.

18   359
19   70
18   359
14a   97
18   359
27   102

1. STATUTORY CONSTRUCTION—CONSTITUTIONAL LAW.

A statute must be held constitutional, unless the unconstitutionality of the act be established beyond a reasonable doubt.

2. CONSTITUTIONAL LAW.

By the terms "under such regulations as may be prescribed by law," occurring in sec. 9, art. 9, of the Constitution, is meant under such reasonable rules as may be prescribed from time to time by the legislative department of the government.

3. SAME.

The power to regulate the control and disposition of public lands of the state is expressly reserved to the legislature.

4. STATE BOARD OF LAND COMMISSIONERS.

The state board of land commissioners must exercise its constitutional powers in accordance with the regulations prescribed by statute, in such manner as, by its judgment, will secure the maximum amount under such regulations.

5. CONSTRUCTION.

A fundamental rule of construction, applicable alike to constitutions and statutes, requires that, if practicable, such construction shall be given to different provisions of the same instrument as shall give effect to all parts.

6. LEGISLATIVE POWER.

The legislature cannot, under the guise of a regulation, take from the state board all power of disposition of the state lands.

7. CONSTITUTIONAL LAW.

The statutory limitation that leases of state lands shall not be for more than five years is a valid regulation. This limitation, however, does not apply to the leasing of stone, gas or mineral lands.

8. CONSTRUCTION.

The practical construction given to a statute by the public officers of the state, charged with the performance of public duties in connection therewith, is always entitled to consideration, in cases of doubt.

THE opinion is in response to the following communication and interrogatories from the governor:

"To the Honorable, the Supreme Court of Colorado:—

"A question of serious import has arisen in the state board of land commissioners, and a resolution was passed at its last meeting, Tuesday, April 11th, 1893, directing me as

president of said board, and governor of the state, under article VI, section 3, of the State Constitution, to secure from your Honorable Court, an opinion at the earliest possible moment, upon the questions herein stated.

"The act creating the present state board of land commissioners became a law on the 2d day of April, 1887, (Laws 1887, p. 328, Mills' Ann. Stat. 3627.)

"Section 10 of said act, (Mills' Ann. Stat. 3636) reads as follows :—

"'No lease of state land shall be for a longer term than five years. When any lease expires by limitation, the holder thereof may renew the same in manner as follows : At any time within the thirty days next preceding the expiration of the lease, the lessee, or his assigns shall notify the register of his desire to renew said lease. If the lessee and state board are agreed as to the valuation of the land, a new lease may be issued, bearing even date with the expiration of the old one, and upon like conditions; Provided, always, That the former valuation shall not be decreased without the consent of the state board; and all expenses incurred by such board of appraisers shall be paid by the lessee; Provided, That nothing in this section shall prohibit the state board from leasing any of the state lands to such party or parties as shall secure to the state the greatest annual revenue; Provided, further, That the state board may refuse to renew a lease at any time, when, in the judgment of said board, the best interests of the fund to which the land belongs, requires that such land be offered for sale.'

"In 1891, (Laws 1891, p. 258,) the said section was amended by adding thereto, (but not otherwise changing or affecting the same) the following words :—

"'No original lease shall be made to any party, nor shall any lease be hereafter renewed, until the expiration of thirty days after public notice of the application for such lease shall have been given by publication for one week in some newspaper of general circulation published in the county in which such lands are situate, the expense of which notice of

publication shall be paid by the applicant for such renewal of the lease   Such leases shall be granted to the party or parties offering in good faith the highest rental before the expiration of such thirty days; and no lease for lands situated under a ditch or canal from which the same can be watered shall be leased upon a valuation of less than two dollars per acre.'

"The Constitution of the state, (article IX, section IX,) provides as follows:—

"' The governor, superintendent of public instruction, secretary of state and attorney general shall constitute the state board of land commissioners, who shall have the direction, control and disposition of the public lands of the state, under such regulations as may be prescribed by law.'

"And it is further provided in the said Constitution, (article IX, section X,) as follows:—

"' It shall be the duty of the state board of land commissioners to provide for the location, protection, sale or other disposition of all the lands heretofore or which may hereafter be granted to the state by the general government, under such regulations as may be prescribed by law, and in such manner as will secure the maximum possible amount therefor. No law shall ever be passed by the general assembly granting any privileges to persons who may have settled upon any such public lands subsequent to the survey thereof by the general government, by which the amount to be derived by the sale, or other disposition of such lands, shall be diminished, directly or indirectly. The general assembly shall, at the earliest practicable period, provide by law that the several grants of land made by congress to the state shall be judiciously located and carefully preserved and held in trust subject to disposal, for the use and benefit of the respective objects for which said grants of land were made; and the general assembly shall provide for the sale of said lands from time to time; and for the faithful application of the proceeds thereof in accordance with the terms of said grants.'

" Now, by the aforesaid constitutional provisions, it appears that the state board of land commissioners have the exclusive ' direction, control and disposition of the public lands of the state,' but that the legislature may prescribe ' regulations.'    And it further appears that it *is the duty* of the said board to provide for the sale *or other disposition* of all the said lands ' *in such manner as will secure the maximum possible amount therefor*, the legislature as before to prescribe the ' regulations.'

" Pursuant to these constitutional provisions, it would appear that section 10, among others, found its place in the original act, as a ' regulation ' of the disposition of said lands by leasing.    The first sentence of that section raises the question whether it is a ' regulation ' or a prohibition.    Its words are these : ' No lease of state land shall be for a longer term than five years.'    But if it be determined to be a competent ' regulation' under the state constitution, the question then arises whether or not as such regulation it is controlled, limited or modified by the following words, to wit : ' *Provided* that *nothing in this* section shall prohibit the state board from leasing *any* of the state lands to such party or parties as shall secure to the state the greatest annual revenue.'

" And in this connection it is proper to state to your Honorable Court the following facts from which it may be seen that this is an important question upon a solemn occasion.

" There are lands under the control and disposition of the state land board within or near the corporate limits of the city of Denver from which the state is now deriving ' an annual revenue ' on leases of five years term not exceeding *in any instance, fifty dollars per annum in forty acre tracts*, and for which on a lease for *twenty* years the said board now has offers for two thousand dollars per annum, but for a *five* years lease the same parties offer less than one hundred and seventy dollars *per annum*.    The interests of the state in the premises require immediate and deep consideration, and it is impossible for the said board as the constitution requires, to ' secure the maximum possible amount ' for these lands, or ' the greatest

annual revenue,' for the same, as required by the proviso in said section 10, unless said prohibition as to five years is held to be invalid as a 'regulation' or is controlled or limited by the aforesaid proviso.

"I beg, therefore, to request the opinion of your Honorable Court in answer to the following questions :

"(1) Are the words constituting the first sentence of said section 10 valid as 'regulation' of leasing state lands?

"(2) If so, under the proviso referred to, in said section 10, can the said board, when it is satisfied it can thereby 'secure to the state the greatest annual revenue' lease the said lands for a longer period than five years, notwithstanding anything in the said section contained?

"I have the honor to be,

"Very respectfully,

"DAVIS H. WAITE,

"Governor of Colorado."

The questions were argued by Mr. EUGENE ENGLEY, attorney general, and by Mr. J. WARNER MILLS.

CHIEF JUSTICE HAYT delivered the opinion of the court.

We will answer the questions presented by his Excellency, the Governor, in the order in which they are propounded.

1. "Are the words constituting the first sentence of said section 10 valid, as a regulation of leasing state lands?"

The sentence referred to in the foregoing interrogatory reads as follows : "No lease of state lands shall be for a longer term than five years." In determining the question presented, it must be borne in mind that the statute has received the sanction of the legislative department of the government, and the approval of the executive. It has been repeatedly held by this court that statutes must be held constitutional, unless the unconstitutionality of the act be established beyond a reasonable doubt. *The People v. Richmond*, 16 Colo. 274.

Of the constitutional provisions invoked, it is to be ob-

served that the power of the state board is to be exercised under :

1st. " Such regulations as may be prescribed by law, " and

2d. " In such manner as will secure the maximum possible amount therefor."

It is contended that the sentence quoted from section 10 of the law of 1885 is a prohibition upon the state board of land commissioners, and not a regulation, and therefore invalid ; and, also, that it is in conflict with that provision of the constitution requiring the maximum possible amount to be secured.

. The word regulation, as used in the constitution, has a well defined meaning.   As given by Webster it is, " A rule or order prescribed for management or government ; prescription ; a regulating principle ; a governing direction ; precept ; law ; as the regulations of a society."

In *Gibbons v. Ogden*, 9 Wheaton, 186, the supreme court of the United States had occasion to interpret that clause of the national constitution which reads :—" Congress shall have power to regulate commerce," etc, and the court held that the word regulate, as used in that connection, means to prescribe the rule by which commerce is to be governed.

So we think the provision, " under such regulations as may be prescribed by law," means such reasonable rules as may be prescribed from time to time, by the legislative department of the government.

Therefore, in leasing state lands, the board must first look to the statutes to ascertain the regulations therein prescribed, and then, in exercising their constitutional powers, they must so act as in the judgment of the board will secure the maximum amount, under the prescribed regulations.   The power to regulate being expressly reserved to the legislature.   A fundamental rule of construction, applicable alike to constitutions and statutes, requires that if practicable such construction shall be given to different provisions of the same instrument as shall give effect to all parts.   *Thatcher v. Thatcher*, 17 Colo. 404; *Brooks v. Mobile School Commission-*

ers, 31 Ala. 227 ; *San Francisco v. Hazen*, 5 Cal. 169 ; *Lever-see v. Reynolds*, 13 Iowa, 310 ; *Aldrich v. Mardoff*, 32 Texas, 204.

If, as contended in this case, the state board has the power to lease the state lands in such manner as will, in its judgment, secure the maximum amount therefor, without regard to the statute, then the provision reserving the right to the legislature to prescribe regulations is not effective for any purpose. It would be useless to prescribe regulations, if such regulations might be ignored whenever, in the judgment of the board, a greater revenue might be secured to the state by adopting a course in conflict with the statute.

Such a construction would place in the state board plenary power over the state lands. Instead of leasing them for twenty years, as now proposed, one board might lease all the state lands for a period of ninety-nine years, and subsequent boards would, in effect, be stripped of all power.

It is not to be inferred from this that all legislation upon the subject would be binding upon the state board. Should the legislature, under the guise of regulations, attempt to take away all power of disposition of the state lands from the state board, or should laws be enacted for the manifest purpose of favoring other than the highest bidder, such acts would be manifestly in violation of the constitution, and void.

We shall not presume that any such vicious legislation will ever meet with favor at the hands of a co-ordinate branch of the government. It will be assumed that it will exercise its powers in accordance with the constitution, and for the best interests of the state at large.

In the passage of the act before us, no wrong intent is claimed. On the contrary, the legislature undoubtedly assumed that with the rapid development of our resources, and the current of immigration which has uninterruptedly poured into this favored commonwealth, the public interests would be best subserved by short leases, and frequent renewals. The beneficence of such a policy as a general rule is ap-

parent, although in exceptional instances a different policy might seem to promise greater returns to the state.

In our opinion the five year limitation is a regulation fairly within the power of the legislature to fix.

2. " Under the proviso referred to in section 10, can the state board, when it is satisfied it can thereby secure to the state the greatest annual revenue, lease the state lands for a longer period than five years, notwithstanding anything in the said section contained ? "

The act of 1887 is to be read in the light of the prior law, and the mischief sought to be remedied by the change.   The former law provided with reference to the renewal of leases that, " If the lease holder shall deposit with the secretary aforesaid, a suitable bond and one year's rent, on or before the expiration of his lease, a new lease shall issue, based upon the new appraisement."

Under this law the right was reserved to the lessee to renew, no matter if it should appear to the state board to be more advantageous to the state to sell the leased premises, or to lease the same to third parties.

This option of renewal undoubtedly caused a loss to the state in some instances.   It might happen that it would be very beneficial to the public to have the leased premises sold, or to have a new lease given to the highest bidder after proper advertisement, as provided by the amendment of 1891.

Under section 10 of the act of 1887, the state board is authorized to renew the lease to the original lessee, if the board should deem it proper to do so.   But the absolute right of the lessee to renew was taken away, and a new lease was not to be executed to him, if others would pay a greater annual rental for the land, or if, in the judgment of the state board the best interests of the fund to which the land belonged required that such land should be offered for sale, then no lease should be made.   By these changes the apparent mischiefs of the previous law are provided against.   And we are of the opinion that it was not the intention of the legislature in adopting the provisos to destroy or impair the

force of the first sentence of the section, fixing a limitation of five years upon all leases.

An examination of the various legislative enactments bearing upon the subject discloses a general intent on the part of that department of the government to limit the duration of time for which the state lands may be leased. By the act of 1881 this limit was fixed at the period of twenty years. By the act of 1887 the right to lease for a period of twenty years was taken away, and a five year limitation substituted, in cases of farming and grazing lands. The leasing of stone, gas and mineral lands being provided for by sec. 8 of the latter act. By the terms of this section it is expressly provided that such lands may be leased "for such length of time * * * as the commissioners may determine."

At the oral argument it was suggested that the five year limitation was applicable to the leasing of these lands as well as to the agricultural and grazing lands of the state. The argument being that the discretion as to time given the board was subject to the five year limitation. Under the five year limitation contained in sec. 10, the board may, at its option, lease for a less period than five years. Hence to construe the words " for such length of time * * * as the commissioners may determine " as meaning for such length of time not to exceed five years, would be to give no effect whatever to the language of sec. 8. For the reasons already given such a construction cannot be indulged. We therefore agree with the attorney general that the five year limitation does not apply to the leasing of such lands.

The practical construction given to a statute by the public officers of the state, charged with the performance of public duties in connection therewith, is always entitled to consideration, in cases of doubt. In this case counsel concede that the conclusions which we have reached are in harmony with the construction that has been heretofore placed upon the provisions under consideration at all times by the officers of the executive department.