## BETTS v. COMMISSIONERS OF THE LAND OFFICE.

No. 1222. Opinion Filed February 11, 1910.

Rehearing Denied August 23, 1910.

(110 Pac. 766.)

1. PUBLIC LANDS—State Land Office—Expenses—Funds Available. Under the terms of the enabling act (Act June 16, 1906, c. 3335, 34 Stat. 267), the state is not prohibited from using a part of the proceeds of the sale of the lands granted by the federal government to the state of Oklahoma for the State University and University Preparatory School, normal schools, the Agricultural and Mechanical College, and the Colored Agricultural and Normal University, penal institutions, and public buildings, and for the support of the common schools, or rentals therefrom, to pay the expenses of the sale or leasing thereof.

2. SAME—Common School Fund—Enabling Act. Under the provisions of the enabling act, the state is not prohibited from using any of the interest derived from the $5,000,000 donated to the state for the use and benefit of the common schools in lieu of sections 16 and 36 and other lands of the Indian Territory, or the income from the permanent school fund as constituted by section 2 of article 11 of the Constitution to pay the expenses of the loaning and investing of the same.

3. SAME—Constitutional Provisions. Under the provisions of sections 2 and 3 of article 11 of the Constitution, the Commissioners of the Land Office are not permitted to utilize any portion of the interest derived from the $5,000,000 donated to the state by the federal government for the use and benefit of the common schools in lieu of sections 16 and 36 and other lands of the Indian Territory, or the income of the permanent school fund, as constituted by section 2 of article 11 of the Constitution, in order to defray the expenses of loaning or investing such permanent fund.

3 (a). Under the provisions of section 3 of article 11 of the Constitution, the Commissioners of the Land Office are permitted under the rules and regulations as prescribed by the Legislature to utilize a portion of the rentals derived from the lands granted the state by the federal government for the common school fund in order to defray the expenses of leasing the same.

4. **PUBLIC LANDS—State School Lands—Sale and Lease—Expenses.** A portion of the proceeds of the sale of the lands granted to the state by the federal government for the State University, the University Preparatory School, normal schools, the Agricultural and Mechanical College, and the Colored Agricultural and Normal University by the terms of the enabling act and the provisions of the Constitution of the state, under rules and regulations as prescribed by the Legislature, may not be utilized to pay the expenses of the sale thereof.

4 (a). A portion of the proceeds of the sale of the lands granted to the state by the federal government for penal or charitable institutions and public buildings by the terms of the enabling act and the provisions of the Constitution of the state, under rules and regulations to be prescribed by the Legislature, may be utilized to pay the expenses of such sales.

4 (b) A portion of the rentals derived from the leasing of said penal or charitable and public building land may be likewise utilized to pay the expenses of the renting of the same.

5. **SAME—Employees.** The Commissioners of the Land Office, under rules and regulations continued in force in the state by virtue of section 10 of the enabling act, until the Legislature of the state prescribes rules and regulations are authorized to determine the number of employees necessary for the leasing of the public lands, fix their salaries and pay them or cause them to be paid out of the rentals derived therefrom. together with the expenses incident to such leasing, without an appropriation made as required by section 55 of article 5 of the Constitution.

5 (a). When the Legislature of the state acts and prescribes rules and regulations for the leasing of such lands, the Commissioners of the Land Office will not longer be authorized to determine the number of employees necessary for the leasing of said lands or any other department of said office, and to fix their salaries.

5 (b). The Legislature of the state in prescribing rules and regulations for the Commissioners of the Land Office cannot delegate its authority to said board.

6. **PUBLIC LANDS—School and University—Sales and Investments —Expenses.** It is neither permissible for the Commissioners of the Land Office, either with or without an enactment of the Legislature, to utilize any part of the proceeds of the rentals derived from the leasing of the lands granted by the general

Vol. 27—5

government to the state for the use and benefit of the common schools, the State University, University Preparatory School, normal schools, Agricultural and Mechanical College, and the Colored Agricultural and Normal University, in order to. pay the expenses of the sale of said lands, or of loaning, investing, or reinvesting the permanent school fund.

(Syllabus by the Court.)

Original proceeding in mandamus by Lew Betts against the Commissioners of the Land Office., Writ denied in part and granted in part.

*Dale, Bierer & Hegler,* for plaintiff.—Citing: *In re Dickson,* 166 Pa. 134; *Wheeler & Wilson Mfg. Co. v. Winette* (Neb.) 91 N. W. 514; *In re Curtis Will,* 16 N. Y. Supp. 180; *Williamson v. U. S.,* 207 U. S. 425; *Campbell v. Comm'rs* (Ind.) 18 N. E. 33; *Shalluck v. Kincaid* (Or.) 49 Pac. 758; *Sate v. Hickman* (Mont.) 23 Pac. 740; *Corpe v. Brooks,* 8 Or. 222; *Robertson v. Board,* 42 Or. 183; *Hasard's Appeal,* 9 Or. 366; *Continental Imp. Co. v. Phelps,* 47 Mich. 299; *Bingham v. Miller,* 17 Ohio, 445; *McPherson v. State Secretary,* 92 Mich. 377; *Union Ins. Co. v. Hodge,* 21 How. (U. S.) 35; *City Council v. Board of Comm'rs.* (Colo.) 77 Pac. 858; *Marye v. Hart,* 76 Cal. 291; *Tuttle v. Nat. Bank,* 161 Ill. 497; *People ex rel. v. Angle,* 109 N. Y. 564; *People ex rel. v. Potter,* 47 N. Y. 375; *People ex rel. v. Rice,* 135 N. Y. 473; *Matter of McPherson,* 104 N. Y. 306; *Bryan v. Menefee,* 21 Okla. 1.

*Charles West,* Attorney General, and *W. C. Reeves,* Assistant Attorney General, for defendants.—Citing: *In re L. E. Waterman Co.,* 68 N. Y. Supp. 892; *Martin v. Francis,* 13 Kan. 167; *In re Internal Improvement Fund,* 24 Colo. 247; *In re Internal Improvements,* 18 Colo. 317; *Sheldon v. Harris,* 17 Wash. 35; *Roach v. Gooding* (Idaho) 81 Pac. 642; *State v. McMillan* (N. D.) 96 N. W. 310; *Mitchell v. Colgan,* 122 Cal. 296; *Nevada v. Rhodes,* 4 Nev. 769; *Page v. Ordway,* 40 N. H. 253; *Ingram v. Colgram,* 106 Cal. 113; *Stale v. Wallicks,* 12 Neb. 407, 15 Neb. 609, 16 Neb. 679; *Stratton v. Green,* 45 Cal. 149; *Railway Co. v. State,* 22 Kan. 1; *Bank v. Curry* (Kan.) 46 Pac. 204; *Smith v. Hubert,*

31 N. Y. Supp. 1076; *State v. Kruttschmidt,* 4 Nev. 178; *McMur-phy v. Garland,* 47 N. H. 316; *State ex rel. v. Eggers* (Nev.) 91 Pac. 819; *Koontz v. Acker,* 25 Pac. 911; *State v. Bardelon,* 6 La. Ann. 68; *Ristine v. State,* 20 Ind. 337; *People v. Spruance,* 8 Colo. 520.

WILLIAMS, J.    The following questions are involved in this case:

(1)   Whether, under the terms of the enabling act, the grant of lands by the federal government for the University of Oklahoma. and the University Preparatory School, normal schools, the Agricultural and Mechanical College, and the Colored Agricultural and Normal University, penal institutions, and public buildings, and for the support of the common schools, it is permissible for a part of the proceeds of the sale of such lands or rentals therefrom, to be utilized for paying the expenses of the sale or leasing of the same.

(2)   As to whether the provisions of the enabling act prevent the state from using any of the interest derived from the $5,000,000 appropriated to the state for the use and benefit of the common schools in  lieu of sections 16 and 36 and other lands of the Indian Territory, or the income from the permanent school fund as constituted by virtue of section 2 of article 11 of the Constitution from being used in order to pay the expenses of loaning or investing such fund.

(3)   If no such limitations are imposed by the enabling act, are such prescribed by any of the provisions of the State Constitution?

(4)   If no such limitations exist by virtue of the Constitution, are such funds available to pay the salaries of the employees of the Commissioners of the Land Office and the official expenses of such employees and of said land office?

(5)   Are the Commissioners of the Land Office authorized to determine the number of employees for the leasing department, fix their salaries, and pay them out of the rentals derived therefrom, together with the expenses of said department, without an

appropriation made as required by section 55 of article 5 of the Constitution?

(6)  Is it permissible to utilize any part of the rentals derived from the leasing of the lands granted by the federal government to the state for the benefit of the common schools, the State University, the University Preparatory School, the normal schools, the Agricultural and Mechanical College and the Colored Agricultural and Normal School in order to pay the expenses of the sale of said lands?

1.  Sections 7, 8 and 9 of the Enabling Act of Nevada (4 Thorp's Fed. Charters, p. 2399; Act March 21, 1864, c. 36, 13 Stat. 32) are substantially the same as sections 8, 9, 10, 11 and 12 of the Enabling Act of Oklahoma. In *State of Nevada v. Rhoades,* 4 Nev. 312, it was held in a similar case that, except where there was a specific provision binding the state to provide the means from its ordinary sources of revenue to pay the expenses of administering such trust, such expenses might be taken from the trust fund: See, also, to the same effect, *Superintendent of Public Instruction v. Auditor of Public Accounts,* 97 Ky. 180, 30 S. W. 404. We conclude that there is nothing in the terms of the grant of the enabling act preventing the appropriation of a portion of the proceeds to the payment of the expenses of the sale or leasing of the same. See, also, *In re Dickson et al.,* 166 Pa. 134, 30 Atl. 1032; *Wheeler & Wilson Mfg. Co. v. Winnett,* 3 Neb. (Unof.) 293, 91 N. W. 514; *In Re Curtis' Will,* 61 Hun. 372, 16 N. Y. Supp. 180.

2.  The same conclusion that was reached relative to the first also applies to the second question.

3.  Section 2 of article 11 of the Constitution defines what shall constitute the permanent school fund, to-wit:

"All proceeds of the sale of public lands that have heretofore been or may be hereafter given by the United States for the use and benefit of the common schools of this state, all such per centum as may be granted by the United States on the sales of public lands, the sum of five million dollars appropriated to the state for the use and benefit of the common schools in lieu of sections six-

teen and thirty-six, and other lands of the Indian Territory, the proceeds of all property that shall fall to the state by escheat, the proceeds of all gifts or donations to the state for common schools not otherwise appropriated by the terms of the gifts, and such other appropriations, gifts or donations as shall be made by the Legislature for the benefit of the common schools."

"Every part of a statute must be viewed in connection with the whole so as to make all its parts harmonize, if practicable, and give a sensible and intelligent effect to each. It is not presumed that the Legislature intended any part of a statute to be without meaning." (2 Lewis' Sutherland, Statutory Construction [2d Ed.] § 491, p. 919.)

See, also, *McCartee v. Orphan Asylum Society,* 9 Cow. (N. Y.) 437, 18 Am. Dec. 516. The same rule applies to the construction of constitutional provisions. See 2 Lewis' Sutherland, Statutory Construction. (2d. Ed.) § 516, p. 954. When we consider the foregoing rule of construction in connection with the maxim, *"Expressio unius est exclusio alterius,"* we are forced to conclude that, by the using of the term, "net income from the leasing of public lands which have been or may be granted by the United States to this state for the use and benefit of common schools," in section 3 of article 11, in connection with the clause, "all proceeds of the sale of public lands that have heretofore or may be hereafter given by the United States for the use and benefit of the common schools of this state," no effect could be given to the former clause if the term, "all proceeds of the sale," was held to mean that part remaining after paying the expenses of the sale therefrom. Likewise, under the same rule, when the term, "net income from the leasing of public lands which have been or may hereafter be granted by the United States for the use and benefit of the common schools," in section 3 of article 11, is considered in connection with the preceding clause in said section, to wit: "the interest and income of the permanent school fund," no effect could be given to the term, "net income from the leasing of public lands," etc., if the term, "interest and income," is to be interpreted to mean that portion of the interest and in-

come remaining after paying the expenses of the loaning and investing of such fund. We are constrained to hold so as to give effect to every portion of said section and article, and not to construe the same so as to render the clause, "net income from the leasing of public lands," meaningless. We accordingly conclude that the expenses in the leasing of the public lands which have been or may be granted by the United States to the state for the use and benefit of the common schools, as well as the lands held for penal, charitable and building purposes, may be paid out of the rentals therefrom, which would probably include all appraisements made with a view of determining the basis of the rental and the salary of the employees connected with the administering of said trust relative to the leasing and collection of such rentals. But no part of the interest and income of the permanent school fund as defined by section 2 of article 11 of the Constitution may be used to pay the expenses of leasing or investing such fund. Also, the expenses of the sale of such lands for the use and benefit of the common school fund must be paid otherwise than out of the proceeds of such sales and the interest and income from said fund.

4. The answer to the third question applies to the fourth question, and a further discussion thereon is not essential. However, the provisions of sections 2, 3, art. 11, in no event apply to the sale of the public lands set apart to the state by Congress for charitable, penal and educational purposes, and all lands taken in lieu thereof, the provisions of the Constitution relating to such lands being contained in section 4 of article 11, the only limitation upon the power of the Legislature relative thereto being that same shall be sold, rented and managed by said commissioners, and that the funds and proceeds derived therefrom shall be under their charge (section 32, art. 6, Const. Okla.), but the manner and terms of the sale or leasing of such lands shall be subject to the conditions of sections 8, 9 and 10 of the Enabling Act. Section 4 of article 11 of the Constitution is substantially contained in section 8 of the Enabling Act. By the terms of the Enabling

Act and the provisions of our Constitution, such land is set apart
to the state by Congress for charitable, penal and public building
purposes, and seems to be under the control of the Legislature
without any special conditions imposed. Under the terms of sec-
tions 2, 3 and 5 of article 11 of the Constitution, it is not per-
missible to utilize any part of the proceeds of the sale of public
lands granted by the United States Government for the use and
benefit of the common schools of this state, the University, the
University Preparatory School, the normal schools, the Agricul-
tural and Mechanical College, and the Colored Agricultural and
Normal University to pay the expenses of the sale thereof. The
Second Legislature made the following appropriation in the gen-
eral appropriation bill approved March 17, 1909, (Sess. Laws 1909,
p. 26) : "For expenses necessary to be received by the Commis-
sioners of the Land Office, in carrying into effect the provisions of
Amended Senate Bill No. 1, approved March 2, 1909, providing
for the sale of certain lands,  *  *  *  $10,000.00." For Senate
Bill No. 1, approved March 2, 1909, see chapter 28, art. 2, p. 448,
Sess. Laws 1909.

5.  As to whether the Commissioners of the Land Office
are authorized to determine the number of employees for the leas-
ing department, fix their salaries, and pay them out of the rentals
derived therefrom, together with the expenses of said department
without an appropriation made as required by section 55 of article
5 of the Constitution, section 10 of the Enabling Act provides:

"That said sections thirteen and thirty-three, aforesaid, if
sold, may be appraised and sold at public sale, in one hundred
and sixty acre tracts or less, under such rules and regulations as
the Legislature of said state may prescribe, preference right to
purchase at the highest bid being given to the lessee at the time
of such sale, but such lands may be leased for periods of not
more than five years, under such rules and regulations as the
Legislature shall prescribe, and until such time as the Legisla-
ture shall prescribe such rules these and all other lands granted
to the state shall be leased under existing rules and regulations
and shall not be subject to homestead entry or any other entry
under the land laws of the United States, whether surveyed or

unsurveyed, but shall be reserved for designated purposes only, and until such time as the Legislature shall prescribe as aforesaid such lands shall be leased under existing rules. * * *"

Said section of the Enabling Act clearly permits the public lands by its terms granted to the state to be leased for prescribed periods under such rules and regulations as the Legislature of the state, after the erection of the state government, may prescribe; but, until such time as such rules and regulations may be prescribed by the Legislature after the erection of the state government, such lands are required to be leased under the then existing rules and regulations. The only legislation either by Congress or the Territorial Legislative Assembly that has been called to our attention or we have been able to find is the following acts: Act. May 4, 1894, c. 68, 28 Stat. 71; Act March 3, 1891, c. 543, 26 Stat. 1026; Act March 6, 1899, c. 25, art. 2, p. 196, Sess. Laws Okla. Ter. The act of March 3, 1891, provides that the lands reserved in said territory by said act may be leased for a period not exceeding three years for the benefit of the school fund under regulations to be prescribed by the Secretary of the Interior. The act of May 4, 1894, provides that certain lands reserved therein for educational and building purposes, as well as all the school lands in said territory, may be leased under rules and regulations thereafter prescribed by the Legislature of said territory, but, until such legislative action, the Governor, Secretary of the Territory, and Superintendent of Public Instruction shall constitute a board for the leasing of said lands under the rules and regulations theretofore prescribed by the Secretary of the Interior, for the respective purposes for which the said reservations were made, except that it shall not be necessary to submit said leases to the Secretary of the Interior for his approval. And it is further therein provided that all necessary expenses and costs incurred in the leasing, management and protection of said lands and leases may be paid out of the proceeds derived from such leases.

The act of March 6, 1899, of the Territory of Oklahoma, provides that all moneys then in the hands of the Governor, the board

for the leasing of school lands, or any member thereof, derived from the leasing of section 13, reserved for educational purposes, and from section 33, reserved for public building purposes, be immediately turned into the territorial treasury; that all moneys thereafter received from said sources by the Governor, the board for the leasing of school lands, or any member thereof shall be turned into the territorial treasury, so that the amount remaining in the hands of the Governor, the board for the leasing of school lands, or any member thereof, shall at no time exceed $500 from either of said sources, but nothing therein should be so construed as to require such official to make deposits with the territorial treasurer oftener than once a day; that the said moneys, or any part thereof, should not be expended for any purpose until such expenditure should be authorized by the Legislative Assembly. None of the provisions of the act of March 6, 1899, seem to be in conflict with any of the acts of Congress. The act of Congress of May 4, 1894, appears to be a continuing appropriation out of the rentals for the payment of the necessary expenses and costs in the leasing of said lands. And such an appropriation, in the absence of the application of such constitutional limitation as is contained in section 55, art. 5, Const. Okla., seems permissible. The payment of such expenses and costs being an expenditure authorized by act of Congress, such act is tantamount to an expenditure authorized by an act of the Legislative Assembly of said territory; Congress having the paramount legislative authority. Under the rules and regulations existing at the time of the erection of the state government, the territorial leasing board had the authority to -pay such expenses out of the rentals or to have the same paid out of such trust funds as were held in the territorial treasury, and, by the terms of section 10 of the Enabling Act, the rules and regulations existing relative to the leasing of said lands were continued in force in the state until the Legislature of the state prescribed rules and regulations for the leasing of the same. Rules and regulations for the leasing of said lands simply mean the laws enacted for the leasing of same and the rules promulgated by

the Secretary of the Interior which had the force of law to govern as to the leasing of such lands. , The further question arises as to whether the payment of the necessary expenses and costs of said leasing_is a part of the rules and regulations then existing. The Commissioners of the Land Office, by virtue of section 32 of article 6 of the Constitution, displace the leasing board under the territory. *State v. Rice*, 33 Mont. 365, 83 Pac. 874. The Commissioners of the Land Office, a branch of the executive department of the state, have construed such rules and regulations as to include the authority to pay the necessary expenses and costs of such leasing out of the rentals, and the Legislature, after knowledge of such construction, having failed to make an appropriation therefor pursuant to section 55 of article 5 of the Constitution, evidently placed a like construction thereon, and the two co-ordinate branches of the government, to wit, the executive and legislative departments, having so construed said provisions, such concurring construction, though not controlling, is persuasive (*Higgins v. Brown*, 20 Okla. 355, 94 Pac. 703; *Territory v. Long Bell Lbr. Co.*, 22 Okla. 890, 99 Pac. 911; *City Council, etc., v. Board of Commissioners, etc*, 33 Colo. 1, 77 Pac. 858), and we are constrained to hold that, under the terms of the Enabling Act, the existing rules and regulations relative to the leasing of said lands were continued in force in the state until the Legislature prescribed rules and regulations, and that, under the same, the provisions for the paying of the necessary expenses and costs relative to the leasing from the rentals amounted to a continuing appropriation. *In re Continuing Appropriations*, 18 Colo. 192, 32 Pac. 272.

But the question further arises as to whether section 55 of article 5 of the Constitution, which provides:

"No money shall ever be paid out of the treasury of this state, nor any of its funds, nor any of the funds under its management, except in pursuance of an appropriation by law, nor unless such payments be made within two and one-half years after the passage of such appropriation act, and every such law making a new appropriation, or continuing or reviving an appropriation, shall distinctly specify the sum appropriated and the object to which

it is to be applied, and it shall not be sufficient for such law to refer to any other law to fix such sum,"—

applies to said expenditures. Said section, being in form a prohibition, is self-executing. (*Ex parte McNaught,* 1 Okla. Cr. 260, 100 Pac. 27), and applies to such expenditures unless the provisions of section 10 of the Enabling Act, relating to the administration of said trust, controls. In *State v. Rice,* 33 Mont. 365, 83 Pac. 874; *State v. Rice,* 204 U. S. 291, 27 Sup. Ct. 281, 51 L. Ed. 490, 27 S. Ct. 281, the court said, in construing similar provisions of the enabling act for the state of Montana relating to the public land grants, that the state may act through its Constitutional Convention, and, in the absence of such action, then it may act through its Legislative Assembly. The Commissioners of the Land Office, by virtue of section 32 of article 6, "have charge of the sale, rental, disposal and management of the school lands and other public lands of the state and of the funds and proceeds under the rules and regulations prescribed by the Legislature." This board has no power to act other than under rules and regulations existing under the Territory of Oklahoma continued in force by virtue of section 10 of the Enabling Act, or by rules and regulations as prescribed by the Legislature of the state."

Section 9 of article 9 of the Constitution of the State of Colorado provides:

"The Governor, Superintendent of Public Instruction, Secretary of State and Attorney General shall constitute the state board of land commissioners, who shall have the direction, control and disposition of the public lands of the state, under such regulations as may be prescribed by law."

Section 10 of article 9 further provides:

"It shall be the duty of the state board of land commissioners to provide for the location, protection, sale or other disposition of all the lands heretofore, or which may hereafter be, granted to the state by the general government, under such regulations as may be prescribed by. law, and in such manner as will secure the maximum possible amount therefor."

In *Re Leasing of State Lands,* 18 Colo. 359, 32 Pac. 986, the court said:

"The word 'regulation,' as used in the Constitution, has a well defined meaning. As given by Webster it is 'a rule or order prescribed for management or government; prescription; a regulating principal; a governing direction; precept; law; as the regulations of a society.' In *Gibbons v. Ogden,* 9 Wheat. 186 [6 L. Ed. 23], the Supreme Court of the United States had occasion to interpret that clause of the national Constitution which reads, 'Congress shall have power to regulate commerce,' etc., and the court held that the word 'regulate,' as used in that connection, means to prescribe the rule by which commerce is to be governed. So we think the provision, 'under such regulations as may be prescribed by law,' means such reasonable rules as may be prescribed from time to time by the legislative department of the government. Therefore, in leasing state lands, the board must first look to the statutes to ascertain the regulations therein prescribed, and then, in exercising their constitutional powers, they must so act as in the judgment of the board will secure the maximum amount under the prescribed regulations, the power to regulate being expressly reserved to the Legislature. A fundamental rule of construction, applicable alike to constitutions and statutes, requires that, if practicable, such construction shall be given to different provisions of the same instrument as shall give effect to all parts. * * * If, as contended in this case, the state board has the power to lease the state lands in such manner as will, in its judgment, secure the maximum amount therefor, without regard to the statute, then the provision reserving the right to the Legislature to prescribe regulations is not effective for any purpose. It would be useless to prescribe regulations, if such regulations might be ignored whenever, in the judgment of the board, a greater revenue might be secured to the state by adopting a course in conflict with the statute. Such a construction would place in the state board plenary power over the state lands. Instead of leasing them for twenty years, as now proposed, one board might lease all the state lands for a period of ninety-nine years, and subsequent boards would, in effect, be stripped of all power. It is not to be inferred from this that all legislation upon the subject would be binding upon the state board. Should the Legislature, under the guise of regulations, attempt to take away all power of disposition of the state lands from the state board, or

should laws be enacted for the manifest purpose of favoring other than the highest bidder, such acts would be manifestly in violation of the Constitution, and void."

See, also, *State v. Fitzpatrick*, 5 Idaho, 499, 51 Pac. 112.

Section 32, art. 6, *supra*, has the effect of placing the control of the sale, renting and managing of the school lands and other public lands of the state and of the funds and proceeds derived therefrom in the hands of the Commissioners of the Land Office, but with the limitation that they shall act only under rules and regulations prescribed by the Legislature.

The title to the land is in the state, and the board is merely a governmental agency of the state, which is trustee. *City of Chicago v. People ex rel. Miller*, 80 Ill. 384; *Jernigan, Treas., v. Finley, Comptroller*, 90 Tex. 206, 38 S. W. 24; *Knox County v. Hunolt*, 110 Mo. 67, 19 S. W. 628. The Legislature has not acted relative to the payment of the expenses of said leasing department, and until such time, under the controlling requirements of section 10 of the Enabling Act relative to this trust, such expenses are to be paid under the rules and regulations or laws existing at the time of the erection of the state, and section 55, art. 5, does not apply. The provisions of this act of May 4, 1894, provide that all the expenses and costs of the leasing of said lands shall be paid out of the rentals. There was no constitutional provision at that time providing that an appropriation should be effective only for a certain, definite time after its enactment, or that it must specify the sum certain. If it was a valid, continuing appropriation as it existed under the laws of the Territory of Oklahoma, and if, by the terms of section 10 of the Enabling Act, it was brought over and kept in force in the state until the Legislature of the state prescribed rules and regulations, it is still a valid, continuing appropriation until the Legislature acts.

In this we are supported by *Cutting v. Taylor*, 3 S. D. 11, 51 N. W. 949, 15 L. R. A. 691. On page 16 of 3 S. D., page 951 of 51 N. W. (15 L. R. A. 691), the court said:

"All legislation under the Constitution must be tested by its provisions, but a law valid when passed, and regularly enacted as

then required, is not necessarily abrogated or repealed by a subsequent constitutional provision requiring the pursuance of other and different methods or forms of legislation than those which were adequate when such law was passed, for that would be to make such constitutional requirement retroactive; and so it must be held that the provisions of our State Constitution prescribing the form and method of passage by the Legislature of appropriation bills refer only to future legislation. From the time of the adoption of the Constitution, the Legislature could make appropriations of public money only in the manner therein prescribed, but the adoption of the Constitution did not have the effect to repeal or abrogate appropriation laws theretofore regularly passed."

In this case the prohibition of section 55, art. 5, can have no retroactive force on account of section 10 of the Enabling Act, bringing same over as a continuing appropriation until the Legislature acts. Although the safeguards incorporated in the Constitution of this state relative to the appropriating and expending of moneys out of the treasury or any of the funds of the state or under its management seem not to harmonize in spirit with the provisions of section 10 of the Enabling Act, yet that is not a valid reason why we should strike down a valid rule and regulation relative to the leasing of said lands existing at the time of the erection of the territory into the state, and continued in force by said section 10 of the Enabling Act, thereby exercising power that only the Legislature may exert. To prevent such exigencies and to supersede such ingraftments as were brought over from the Territory of Oklahoma which did not breathe the spirit of the Constitution, section 45 of article 5 of the Constitution, mandatory in its terms, providing that "the Legislature shall pass such laws as shall be necessary for the carrying into effect the provisions of this Constitution," was inserted. The First Legislature of the state passed an act entitled, "An act to confer on the Commissioners of the Land Office, consisting of the Governor, Secretary of State, State Auditor, Superintendent of Public Instruction and the President of the Board of Agriculture authority to manage, loan, invest and regulate the investment and deposit

of the permanent school funds." See Sess. Laws 1907-08, pp, 664, 665: And section 4 of said act provides:

"The Commissioners of the Land Office may appoint such assistants and incur such expenses as are necessary in the management and handling of such property and funds, and shall pay such expenses out of the income of the school funds."

Said section is repugnant to the Constitution for several reasons: (1) It attempts to confer or delegate legislative power, which was by the terms of the Constitution lodged in the Legislature, upon said board, so as to authorize it to determine the number of employees needed and fix their salaries. This is not permissible as to enactments by our State Legislature since the organization of the state government. *State ex rel. Rush v. Budge et al., State Capitol Com'rs.*, 14 N. D. 532, 105 N. W. 725. See, also, *Cutting v. Taylor*, 3 S. D. 11, 51 N. W. 949, 15 L. R. A. 691. (2) It attempts to authorize the expenditures of a part of the interest of the permanent school fund as constituted by sec. 2, art. 11, Const., to pay the expenses of loaning, investing or reinvesting same, which is not permissible. (3) It attempts to make an appropriation without complying with the requirements of section 55 of article 5 of the Constitution. See *Menefee, Treasurer, v. Askew, etc.*, 25 Okla. 623, 107 Pac. 159. On March 22, 1909, the Second Legislature enacted an act entitled "An act providing for the manner of procedure in leasing the public lands of the state and declaring an emergency." See Sess. Laws 1909, pp. 440-448. By the terms of this act rules and regulations were provided for the manner of procedure in leasing such land, but no provision was made relating to the payment of the expense of the leasing of the same. Everything else was done in order to comply with the requirements of section 10 of the Enabling Act except to provide for the payment of the expenses of the leasing department by means of an appropriation. And so, with the adjournment of the Second Legislature, the provision that was brought over from the Territory of Oklahoma under the terms of section 10 of the Enabling Act, relating to the payment of the necessary expense and costs of the leasing of said land, still remained in force.

In passing, it may be well to state that there is a serious question as to whether section 20 of said act, providing that "the commissioners of the land office may make such other and further rules and regulations governing the public lands of this state as not in conflict herewith," is valid, in that it confers legislative power on said commissioners which is vested within the Legislature, and not subject to be delegated. The case of *State ex rel. Rush v. Budge et al., State Capital Com'rs, supra,* seems to conclusively settle that point.

The investment or loaning of the permanent school fund pursuant to the terms of the trust may be done by the Commissioners of the Land Office as agents of the trustee, which is the state, in accordance with the rules and regulations as prescribed by the Legislature, without a specific appropriation as required by section 55 of article 5 of the Constitution; the investing and reinvesting of the same under the powers of the Constitution as prescribed by such rules and regulations of the Legislature not amounting to an expenditure or depending upon an appropriation under the provisions of said section. Whilst it may be permissible for the Legislature by prescribing rules and regulations to require said fund to be paid into the state treasury as required by section 5861, 5862, Wilson's Rev. & Ann. St. 1903, yet it would still retain its character as a trust fund, and not be subject to an appropriation in any manner for expenditures by the Legislature or any other body except as authorized by the Constitution, and would still be under the charge and control of the Commissioners of the Land Office under regulations and rules as prescribed by the Legislature. For instance, the Legislature would not be permitted to prescribe rules and regulations for the paying out of said money by the treasurer for investment or otherwise, except upon the approval of the Commissioners of the Land Office. If it were provided by the Legislature that such fund should be paid out solely upon the warrant of the auditor without the approval or direction of the Commissioners of the Land Office, that would be tantamount to divesting from them charge and control as con-

ferred by section 32 of article 6 of the Constitution, and that would not be permissible. *In re Leasing of the State Land, supra.* Section 6 of article 11 of the Constitution constitutes a continuing appropriation of the common school fund and other educational funds for the purposes of investment and reinvestment. Said fund, when in the state treasury, may be paid out under the order of the Commissioners of the Land Office pursuant to rules and regulations made by the Legislature for the purposes of investment and reinvestment in accordance with section 6, art. 11, Const., without any specific appropriation under the requirements of section 55, art. 5, Const.

6. The interest and income of the permanent school fund, the net income from the leasing of the lands for the use and benefit of the common schools, together with any revenues derived from taxes authorized to be levied for such purposes, and any other sum that may be added thereto by law, may be apportioned among all and the several common school districts of the state by said commissioners in proportion to the school population of the several districts under such rules and regulations as may be prescribed by the Legislature, and the same may be paid to the proper officers under the direction of said commissioners under rules and regulations as prescribed by the Legislature, without any specific appropriation as required by section 55 of article 5 of the Constitution; such action being specially authorized by section 3, art. 11, Const. See, also, Sess. Laws 1907-08, p. 666.

The authority for the expenditures for necessary expenses and costs under the territory is that incurred "in leasing, management and protection of said lands and leases." No lands were permitted to be sold during the period prior to the erection of the state, and to attempt to pay the expenses of the sale of such lands by the income from the rentals would be an unauthorized diversion.

It being sought in this action to have paid necessary expenses incurred by the plaintiff in the sum of $130.03 in examining lands upon applications for loans which had been made, or in order to invest the income from the permanent school fund, and also to

have paid out of the rentals derived from the leasing of the common school land the sum of $2, expenses incurred by the plaintiff for examining into the conditions of a leasehold of such lands in this state, it necessarily follows that the relief prayed for relative to the $130.03 which sought an expenditure of the interest or income from the common school fund should be denied, but the relief prayed for as to the sum of $2, paying the expense incurred relative to the leasing of such lands, is granted.

The writ is granted in part and denied in part.

All the Justices concur.