APPROPRIATION — LAND OFFICE COMMISSION Under Sections Article XI, Section 3, Article XI, Section 4, Article XI, Section 5 of the Oklahoma Constitution, the Legislature may lawfully appropriate only from that portion of the money in the Depletion, Management and Sale Fund which is derived from surface lease income on lands belonging to the Permanent School Fund and the Public Building Fund, and direct transfer thereof to the Capitol Improvement Authority Fund, in order to pay for the use of that portion of quarters and facilities in the Jim Thorpe Building utilized by the Commissioners of the Land Office in carrying out the functions and duties of conserving, improving, protecting, managing and leasing lands belonging to the Permanent School Fund and Public Building Fund. Further, under these sections of the Constitution, the Legislature may not lawfully appropriate and direct transfer of any money in the Depletion, Management and Sale Fund to the Capitol Improvement Authority Fund in order to pay for the use of quarters and facilities by other state agencies, boards or commissions. The Attorney General has considered your request for an opinion wherein you ask the following questions: "1. May the Legislature lawfully appropriate funds from the Depletion, Management and Sale Fund of the Commissioners of the Land Office and order the same transferred to the Capitol Improvement Authority Bond Sinking Fund in payment of bonds issued by said Authority? "2. If your answer to Question 1 is in the affirmative, may the Legislature lawfully appropriate money from the Depletion, Management and Sale Fund for the payment of rent on office space by other agencies, boards and commissions in the State Capitol and provide that part of said appropriated funds shall be deposited in the Capitol Improvement Authority Bond Sinking Fund?" The authority and responsibility of the Commissioners of the Land Office are set forth in Article VI, Section 32 of the Oklahoma Constitution, which provides as follows: "32. The Governor, Secretary of State, State Auditor, Superintendent of Public Instruction, and the President of the Board of Agriculture, shall constitute the Commissioners of the Land Office, who shall have charge of the sale, rental, disposal, and managing of the school lands and other public lands of the State, and of the funds and proceeds derived therefrom, under rules and regulations prescribed by the Legislature." The Depletion, Management and Sale Fund is created in 64 O.S. 87 [64-87](a) (1971). which reads in part as follows: "All moneys received from surface leases on any and all lands under the jurisdiction, management and control of the Commissioners of the Land Office, either agricultural, grazing or other purposes, from and after the effective date of this Act, shall be classified and disposed of in the following manner: "(a) Forty-five percent (45%) of all such money is hereby classified and denominated as 'rental' and when collected shall be credited to the account of earnings to the fund to which the lands belong, and shall be distributed to the various schools and to the Public Building Fund as provided by law. "(b) Repealed. "(c) Forty-five percent (45%) of all such money as may be collected off lands belonging to the Public Building Fund, the Permanent School Fund, and to the State Educational Fund, is hereby classified and denominated as 'Depletion, Management and Sale' and when collected, shall be credited to a revolving fund herein designated as the 'Depletion, Management and Sale' Fund, to be used for the purpose of conserving, improving and protecting the land so leased, and improvements thereon; and for the purpose of paying the expenses of selling and disposing of such lands, and for the further purpose of defraying the necessary expenses of administering, managing, and renting the lands belonging to the permanent Common School Fund and the Public Building Fund, including the expenses of collecting the rents therefrom, under the conditions and limitations hereinafter set forth. "(d) There is hereby created in the State Depository, to be kept by said State Depository, a revolving fund, into which all collections made and credited under Paragraph (c) above, shall be deposited by the Commissioners of the Land Office, and from which said fund payments shall be made for services rendered, or materials furnished, in the conserving, improving and protecting of school lands and public building lands and the improvements thereon; and from that portion of such funds as may arise from the collection of rentals of permanent common school lands and public building lands, payments shall be made for the necessary expenses of administering, managing and renting the lands belonging to the permanent Common School Fund and the Public Building Fund and the expenses of collecting the rents accruing to the State thereon, as hereinafter provided; and also out of said Fund there shall be paid the necessary expenses and costs involved in selling any lands under the management and control of the Commissioners of the Land Office; . . . " Under the above quoted section, the Depletion, Management and Sale Fund is composed of money received from surface leases covering lands belonging to the Public Building Fund, Permanent School Fund and the State Educational Institution Fund, and the section provides for the use of this money for the purpose of conserving, improving, protecting and managing lands so leased and for the purpose of paying expenses of leasing and selling any such lands. In Betts v. Commissioners of the Land Office, 110 P. 766 (1910), it was held that only the expenses in leasing of public lands which were granted by the United States to the State of Oklahoma for the use and benefit of common schools and for penal, charitable and building purposes may be paid out of the lease income of such lands. From the opinion it appears that leasing expenses would include expenses of conserving, improving, protecting and managing leased land. The Court in the Betts case based its holding concerning common school lands on the use of the term "net income" in Article XI, Section 3 of the Oklahoma Constitution, and thereby concluded that only the net income from the leasing of such land was required to be used and applied each year for the benefit of the common :schools, and therefore, the payment of leasing expenses would be authorized from the gross amount of lease income. Concerning the lands belonging to the Public Building Fund, for penal, charitable and building purposes, the Court based its holding on the fact that Article XI, Section 2 and Article XI, Section 3 of the Oklahoma Constitution, do not apply to these lands and that the only provision in the Constitution relating to these lands, Section 4, Article XI, Section 8 of the Enabling Act relating to such lands, do not impose any special conditions or restrictions. The Court did not actually discuss the constitutional limitations placed upon the rental or lease income of land belonging to the Educational Institution Fund. It would follow, however, in applying the Court's reasoning with regard to common school land under ArticleXI, Section 3 of the Oklahoma Constitution, that rental or lease income from land belonging to the Educational Institution Fund could not be used to pay leasing or rental expenses in view of the fact that Article XI, Section 5 of the Oklahoma Constitution, does not refer to "net income" or "net rental", but rather provides that "interest, rental, or otherwise, only shall be used exclusively for the benefit of said educational institution." The Court further held that lease income from common school lands and land belonging to the State Educational Institution Fund could not, with or without an enactment of the Legislature, be utilized to pay the expenses of the sale of such lands, and that the proceeds of the sale of lands belonging to the Public Building Fund could be utilized to pay expenses of the sale of that land. In applying the holding in the Betts case to 64 O.S. 87a [64-87a], it is apparent that the use of the Depletion, Management and Sale Fund, which is made up of surface lease income from lands belonging to the Public Building Fund, Permanent School Fund and the State Educational Institution Fund, is subject to Sections 3, 4 and 5, Article XI of the Oklahoma Constitution. It would, therefore, follow that to the extent Section 87a authorizes expenditures of surface lease income from lands belonging to the Permanent School Fund and the Public Building Fund for the purpose of paying expenses of sale or disposal of such lands, and the expenditure of surface lease income from lands belonging to the State Educational Institution Fund for any purpose other than the use and benefit of the educational institutions specified in Article XI, Section 5 of the Oklahoma Constitution, it violates Article XI, Section 3, Article XI, Section 4 and Article XI, Section 5 of the Oklahoma Constitution. Appropriations, transfers or other legislative directions for payment of money in the Depletion, Management and Sale Fund would also be subject to the foregoing application of Sections 3, 4 and 5, Article XI of the Oklahoma Constitution and the Betts case. Section 4, Chapter 188
O.S.L. 1974 (74 O.S. 285 [74-285](40) (1974) note), provides as follows: "The Commissioners of the Land Office are hereby directed to pay for use of quarters and facilities by said Commissioners, from the funds appropriated by Section 1 of this Act, to the Capitol Improvement Authority, the sum of Twenty-seven Thousand Dollars ($27,000.00) for transfer to the Capitol Improvement Authority Bond Sinking Fund." Section 1 of the above quoted Act appropriated funds from the Depletion, Management and Sale Fund. Section 4, Chapter 242 O.S.L. 1973 (74 O.S. 285 [74-285] (1973) (40) note) contains substantially the same language as quoted above. The Capitol Improvement Authority is authorized by 73 O.S. 169 [73-169] (1974) to collect from state agencies rental charges as may be necessary for the payment of bonds for space occupied in buildings which have been remodeled or renovated under the provisions of Section 73 O.S. 168 [73-168] of Title 73. Section 73 O.S. 168 [73-168] of that Title authorizes the Capitol Improvement Authority to remodel and renovate the Jim Thorpe Building. It would follow that money in the Depletion, Management and Sale Fund could be transferred to the Capitol Improvement Authority Fund for utilization of space in the Jim Thorpe Building to the same extent that such money could otherwise be lawfully expended by the Commissioners of the Land Office consistent with the holding in the Betts case and Sections 3, 4 and 5, ArticleXI of the Oklahoma Constitution. In applying the answer to the first question, your second question would be answered in the negative. It is, therefore, the opinion of the Attorney General that your questions be answered as follows: Under Sections 3, 4 and 5, Article XI of the Oklahoma Constitution, the Legislature may lawfully appropriate only from that portion of the money in the Depletion, Management and Sale Fund which is derived from surface lease income on lands belonging to the Permanent School Fund and the Public Building Fund, and direct transfer thereof to the Capitol Improvement Authority Fund, in order to pay for the use of that portion of quarters and facilities in the Jim Thorpe Building utilized by the Commissioners of the Land Office in carrying out the functions and duties of conserving, improving, protecting, managing and leasing lands belonging to the Permanent School Fund and Public Building Fund. Further, under these sections of the Constitution, the Legislature may not lawfully appropriate and direct transfer of any money in the Depletion, Management and Sale Fund to the Capitol Improvement Authority Fund in order to pay for the use of quarters and facilities by other state agencies, boards or commissions. (Gerald E. Weis)