## Dickson & Company's Assigned Estate.    Appeal of F. P. Bell, Assignee.

*Assignment for creditors—Trust—Act of April 17, 1843.*

Certain creditors of an insolvent placed their claims in the hands of an attorney-at-law to collect and adjust. He took from the debtor, judgment notes payable to himself as trustee for his clients. Subsequently the debtor made an assignment to him, as "trustee of our preferred judgment creditors," of the debtor's book accounts, with power to collect the same, pay the debts of the judgment creditors, and return the balance to the debtor. About an hour after this special assignment, the debtor made a general assignment for the benefit of creditors. *Held,* that under the act of April 17, 1843, P. L. 273, the assignment to the attorney enured to the benefit of all the creditors of the debtor.

In the above case an agreement was entered into between the sheriff, who had levied upon the property under the confessed judgments, the general assignee, and the attorney of the judgment creditors, by which the sheriff delivered the personal property levied upon to the general assignee who was to sell, and pay the proceeds to the sheriff to be applied to the executions. The attorney or special assignee authorized the general assignee to collect the book accounts and pay the proceeds to the attorney until the judgments should be satisfied. The general assignee administered upon the entire property and brought the whole proceeds into his

account. *Held*, that each of the funds must bear its own burden of the expense of administration.

Argued Nov. 12, 1894. Appeal, No. 293, Oct. T., 1894, by assignee for creditors, from order of C. P. Allegheny Co., March T., 1890, No. 789, overruling exceptions to auditor's report. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Exceptions to report of auditor on account of assignee for the benefit of creditors.

The case was referred to G. W. Williams, Esq., as auditor.

The facts appear by the following opinion of the court below:

" On Feb. 21, 1890, Dickson & Co. executed and delivered to Frank P. Bell a deed of voluntary assignment for the bene-- fit of creditors, which was accepted the same day and was afterwards duly recorded. Prior to making this assignment, on Feb. 20th, they confessed three judgments in C. P. No. 1, at Nos. 310, 311 and 312 March T., 1890, D. S. B., upon which executions were issued the same day, and on Feb. 21st confessed two other judgments in favor of W. A. Schmidt, in trust for certain creditors, at 205 and 206 of March Term of said court, upon which executions were issued about a half hour before the execution of the deed of assignment to Bell.

" On Feb. 20th, Dickson & Co. executed an assignment to Waldman A. Schmidt, trustee ' for the benefit of our preferred judgment creditors, entered on the 20th day of February, 1890, all and every our book accounts, as shown by our said books against all the parties our debtors on our said books, said accounts being shown in the schedule hereunto annexed and marked Exhibit A.,' and further providing that in case the judgments were paid in full out of the proceeds of execution, said accounts should be re-transferred to Dickson & Co., and if not paid in full the trustee should collect said accounts and apply the proceeds thereof to the payment in full of said judgments, the balance to be transferred to the said Dickson & Co., or their assigns, for the benefit of the remaining creditors of said firm.

" Upon the same paper is written an assignment to the same W. A. Schmidt, trustee, as security for other judgments confessed to him as trustee for creditors named, ' the above mentioned balance, if any,' ' upon the same terms and conditions as

above set forth; any balance remaining to be by him transferred to said Dickson & Co., or their assigns.'

" On Feb. 27, 1890, an agreement was entered into by the assignee, the sheriff, and the attorney of the judgment creditors, by which the sheriff delivered possession of the personal property levied, which the assignee agreed to sell and pay the proceeds to the sheriff, to be applied to the executions in his hands. The same day W. A. Schmidt, by writing, 'authorized F. B. Bell, assignee of Dickson & Co.,' to collect the book accounts and pay the proceeds to Schmidt until the judgments should be fully satisfied, and the balance to be held by Bell, as assignee, 'according to the terms of the said assignment of said book accounts and by virtue of the aforesaid deed of assignment.'.

" The assignee thereupon took charge of the entire property of the firm, personal property under execution and book accounts, and proceeded to administer the same, and has brought the entire proceeds into his account.

" The property being the stock of goods in a wholesale drug store, the arrangement made with the sheriff was advisable and politic. Such a stock would certainly have been sacrificed at a public sale, and the increased proceeds of a private sale would doubtless be more than sufficient to pay the additional expense. No objection has been made to the payment of the proceeds of the personal property to the sheriff, except as to some items of his charges, which are alleged to be excessive.

"·Some of the creditors have objected to the application of the moneys collected from loose accounts to the payment of the judgments, upon which they allege the judgment creditors had no lien. This depends upon the validity of the assignment to W. A. Schmidt.

" The assignment to W. A. Schmidt is in terms an assignment in trust for the benefit of certain creditors, made by the debtors on account of inability to pay their debts, as shown by their confession of judgment to 'preferred creditors' and their general assignment made the same day. It therefore comes expressly within the act of April 17, 1843, and must be 'held and construed to enure to the benefit of all the creditors, and be subject in all respects to the laws now in force relative to voluntary assignments.' Miners' Nat. Bank's Appeal, 57 Pa.

193; Wallace v. Wainwright, 87 Pa. 263. When Schmidt author-
ized F. P. Bell as assignee to collect their moneys, he had no
power to authorize him to appropriate the money to any special
creditors in exclusion of others. But as such assignment was,
by the act of 1843, made subject to all laws relating to volun-
tary assignment, it should have been recorded within thirty
days, and not having been so recorded became void; and the
property, reverted to the assignors, by virtue of the general
assignment passed to Bell as assignee. He was, therefore, bound
to account for these moneys as assignee, which he has done in
his account filed. But having applied these moneys to payment
of the judgment creditors, in exclusion of the general creditors,
his account must be rectified in this respect.

"It follows, then, that the account of the assignee is com-
posed of two funds—that derived from the sale of the personal
property which he received by virtue of the agreement with the
sheriff, and which by his agreement he was bound to pay to the
sheriff, to be applied by him to satisfaction of the executions
in his hands; the other derived from the book accounts and dis-
tributed among the creditors generally. By the account it
appears that the first of these funds amounts to $16,475.29 and
the second to $8,907.56.

"Each of these funds must bear its own burden of the expense
of administration. The judgment creditors having agreed that
the personal property levied on should be sold by the assignee,
the expense incident to such sale, including the compensation
of the assignee for that part of the work, must be charged to
that fund. The balance of the fund is properly applicable to
the judgments. The second fund can only be charged with the
expense incident to its collection and administration, including
compensation to the assignee for that part of the work. When
the balance of each fund has thus been ascertained, the balance
of the first fund will be appropriated to payment of the judg-
ments in the order of their lien. The balance of the second
fund will be appropriated to the remaining indebtedness, includ-
ing so much of the judgments as may remain unpaid. The judg-
ment creditors having the right to participate in two funds, will
be entitled to pro-rate with general creditors for the full amount
of their claims in distribution of the second fund, and not merely
on the balance, unless such proportion is more than sufficient
to pay their claims in full.

" The account as filed does not give the data necessary to make these distributions. The amount of expenses chargeable to each fund cannot be accurately determined without some further testimony, and the standing of the execution creditors cannot be accurately determined until this has been done and the order of their lien fixed; and besides, as these changes involve considerable complication, it is proper that the parties interested should have the opportunity to be heard before the auditor and to take exceptions, if they think proper, to his action in these matters.

" We cannot anticipate all the questions which may arise, and will therefore return the case to the auditor with instructions to carefully restate the account upon the principles herein indicated, with the right in the parties to except to his findings as upon original reference.

" The other exceptions filed in the case we will not dispose of now. They may be submitted to the auditor for his consideration."

The following exceptions, filed to the auditor's second report, averred that the auditor erred :

" 1. In rejecting and disregarding the testimony offered for the purpose of proving, and not finding :

" (a) That W. A. Schmidt was a trustee, constituted and made such by certain creditors of Dickson & Co., named in the judgments hereinafter designated, to whom said Dickson & Co. confessed judgments at Nos. 306, 307, 308, 310 and 311, March Term, 1890, Court of Common Pleas No. 4, of Allegheny county ;

" (b) That to the said W. A. Schmidt, as said trustee, said Dickson & Co. assigned their book accounts as collateral security for the payment of said judgments, before said Dickson & Co. made a general assignment for the benefit of their creditors to said F. B. Bell, assignee and accountant;

" (c) That by reason of holding said judgments and said assignments of book accounts to him as trustee, said W. A. Schmidt had a lien upon the fund arising from the collections made upon said book accounts, upon which he was entitled to distribute upon judgments confessed to him as aforesaid by said Dickson & Co., as trustee, the payment of which judgments was secured by the assignment of said book accounts as col-

lateral security before said fund arising from said book accounts would be available for distribution to the general creditors of said Dickson & Co.

" (d) That said assignment of the book accounts made by Dickson & Co., to said W. A. Schmidt, as trustee, as collateral security for the payment of judgments confessed to him by said Dickson & Co., as trustee for certain creditors as aforesaid, was valid as to creditors not named in said assignment of book accounts.

" (e) That it was unnecessary, under the acts of assembly relating to assignments for the benefit of creditors, to record said assignment of book accounts, by said Dickson & Co. to W. A. Schmidt, trustee, as collateral security for the payment of judgments, within thirty days after its execution and delivery. [1]

" 2. In finding that no testimony had been offered and taken by him on the question of what proportion of the expenses should be borne by the funds arising from the stock and the book accounts, respectively. [2]

" 3. In finding the expenses properly chargeable to the fund derived from the book accounts to be as follows, to wit: Assignee's commission, $429.67, and the following items: July 26, ex., printing notice to remit, $1.50; postage stamps, $4.50; Aug. 8th, postage stamps, 98c; Oct. 11th, collecting Beck draft, 15c; Dec. 11th, trip to Uniontown, etc., to collect, $13.25; Nov. 25th, cash paid on probate, $6.50; Feb. 13th, collection, $7.25; Jos. Briel, attorney fees, $5.00; cost paid J. Gripp, collection, $28.30; commission paid J. Gripp, collection cases, $27.14. [3]

" 4. In assuming that the charges of the assignee's counsel are for services exclusively for collecting on book accounts. [4]

" 5. In finding the proportion of expenses to be borne by the fund arising from stock to be $4,411.00. [5]

" 6. In charging the fund arising from the sale of stock with expenses of assignee other than court and sheriff's costs. [6]

" 7. In finding that the assignment by Dickson & Co. of their book accounts to W. A. Schmidt, trustee, vested in said trustee an absolute property of said book accounts in trust for certain creditors; and not that said assignment merely gave said trustee a lien on said book accounts to secure the payment

of judgments confessed by said Dickson & Co. to said Schmidt as trustee for the creditors named in said judgments at Nos. 306, 307, 308, 310 and 311, March Term, 1890, D. S. B. [7]

" 8. In not distributing the funds arising both from stock and book accounts as follows, to wit: The fund arising from the stock to the court and sheriff's costs of judgments at Nos. 306, 307, 308, 310 and 311, March Term, 1890, D. S. B., then to the debts and interest of said judgments until paid in full, if sufficient; the balance, if any, to the expenses of the administration of the trust estate and the general creditors of Dickson & Co. [8]

" 9. In surcharging the assignee with any sum whatever. [9]

" 10. The exceptions in behalf of the assignee to the auditor's report originally filed are hereby renewed." [10]

The court filed the following opinion on the exceptions:

" This case is before us upon exceptions to a second report. Upon a former report we held that an assignment of the book accounts of the firm to W. A. Schmidt was a voluntary assignment for the benefit of creditors, subject to the provisions of the act of April 17, 1843, and, therefore, accrued to the benefit of all the creditors, and the proceeds having come into the hands of Frank P. Bell, and being brought into his account, should be distributed pro rata to all the creditors. The matter was referred again to the auditor to make distribution on this principle.

" Application was made by counsel of the assignee to the court to direct the auditor to receive testimony affecting the question. We did not deem it necessary to do so, and did not make any order in the premises, but suggested that the testimony should be offered to the auditor. An offer was made to him, but the auditor, believing that his duty was limited by the former ruling of the court, declined to receive the evidence. The importance of the matter justifies a further consideration of the question, and we have considered it as if the assignee had proved what he proposed to prove.

" The offer was to prove by W. A. Schmidt that prior to the 20th day of February, 1890, certain creditors named ' constituted him their trustee, with power to collect and adjust all claims which they, or either of them, had against Dickson & Co., the assignors in these proceedings.' [The detailed statement shows

that the several parties had respectively 'placed their claims in the hands of said Schmidt for collection, and authorized him to collect and adjust them on their behalf.' This would not constitute him a trustee. He was a mere agent, or attorney, to collect. Being a member of the bar, he personally received them as attorney at law. It is not alleged that the claims were assigned to him. He took from Dickson & Co. judgment notes payable to himself, as trustee for the parties, but calling himself trustee would not change his character as attorney or agent. The claims still belonged to the parties, and they had entire control of them. He did not become a trustee until Dickson & Co. made the assignment to him as 'trustee of our preferred judgment creditors.'] [11] By this assignment the legal title to the property was placed in Schmidt, but the beneficial interest belonged to the clients whom he represented. The legal and equitable titles did not unite in him. He had the power to dispose of the property, but solely for the purpose of paying certain indebtedness of Dickson & Co., and when this purpose was accomplished to turn over the balance to Dickson & Co.

" [The assignment was the voluntary act of Dickson & Co. to a person to whom they were not indebted, for the benefit of other persons to whom they were indebted, made when they knew they were insolvent, as is shown by the fact that it was executed a few hours after confessing judgments to the amount of $20,000, and within one hour before the execution of a general assignment for the benefit of creditors; and on its face recognizes the fact of insolvency by describing the parties inter ested as 'preferred judgment creditors.'] [14]

" As was said in Lucas v. S. & E. R. R. Co., 32 Pa. 464: ' We have here property, a trustee, a trust and creditors of an insolvent company, and the simple question is whether by an ambiguous inversion of language the real meaning of this instrument can be so covered as to defeat the operation of a most salutary law.' In Wallace v. Wainwright, 87 Pa. 266, Judge SHARSWOOD says: 'None of the acts of assembly relating to assignments for the benefit of creditors have required that they should be drawn in any specific form. . . . Since 1818 property transferred to one person to be employed, paid over or converted for the benefit of others has been held to be property held in trust within the operation of the statutes.' In Fallon's Appeal, 42

Pa. 235, Chief Justice LOWRIE said: 'Of course the courts cannot allow the law to be evaded by any sham departure from the general form of assignments, and where the transaction is substantially an assignment for the benefit of creditors, involving no other important purpose that would be prejudiced by bringing it under the act of 1818, the substance rather than the form must be regarded.' And in Chaffin v. Risk, 24 Pa. 432, Judge LOWRIE defined a trust as existing 'where the legal estate is in one person and the equitable interest in another.'

" [These cases in our judgment clearly establish the character of the assignment in this case as a trust for the benefit of creditors, which not being recorded was void under the act of March 24, 1818. The property was turned over by Schmidt to Bell, the general assignee, who has brought the proceeds into his account for distribution. The property was his and is distributable under the assignment to him.] [12]  Kern v. Powell, 98 Pa. 253.

" We have carefully examined all authorities cited by counsel for the assignee and find no reason to change the conclusion to which we came upon a former hearing of the case.

" This disposes of the first exception.

" [We do not see that the fact that the accounts are said to be as collateral security affects the case as suggested in the seventh exception.  The transfer is absolute, the subsequent limitation is conditional.  It is still a transfer in trust for the benefit of creditors.] [13]

" The 2d, 3d, 4th, 5th and 6th exceptions relate to the disposition of the expenses of administration, as appears by reference to the former opinion filed in this case.  After a levy had been made on all the personal property of Dickson & Co., by agreement of the assignee and judgment creditors with the sheriff, all the property was delivered to the assignee to be sold by him, and the proceeds to be appropriated: first, to the sheriff of Allegheny county to the amount of above debt, interest and costs upon said suits of execution, if a sufficient amount be realized from said sales.  Schmidt then turned over to the assignee the accounts which had been assigned to him.  The proceeds of these two properties constitute the fund for distribution.  Dickson & Co. had no other estate.

" The court then held that 'each of these funds must bear

its own burden of the expense of administration.' We then said : ' We cannot anticipate all the questions which may arise, and will therefore return the case to the auditor, with instructions to carefully re-state the account upon the principles herein indicated, with right in the parties to except to his findings as upon original reference. The other exceptions we will not dispose of now, they may be submitted to the auditor for his consideration.' The auditor has made his report, in which he has charged a portion of the expenses to each fund. The counsel for the assignee claims that no part of the expenses of administration should be charged against the proceeds of stock which had been levied on by the sheriff, because, by the agreement between the judgment creditors and the assignee, the proceeds were to be paid to the sheriff in satisfaction of his executions.

" In Kent's Appeal, 87 Pa. 165, the power of the assignee to make such assignment was recognized, but we find no case in which the question of the expenses of such transaction has been considered. The parties must have known that the sale of the goods would involve considerable expense, and when they speak of ' proceeds ' it may be assumed that they meant the amount of money produced, less the costs of sale. If there were no other fund it would scarcely be contended that under such an agreement the assignee would not have the right to retain his costs and expenses. There being another fund upon which the judgment creditors had no special claim cannot change the effect of the agreement. We doubt if the assignee could agree to impose the costs of selling the goods subject to lien upon the general fund. It would be unjust to take the fund applicable to general creditors to pay the costs of increasing the fund applicable to preferred creditors, though the general creditors might be incidentally benefited by paying those claims, and thus to a certain extent relieving the general fund. But the assignee in this case did not attempt to make such an agreement, and it certainly cannot be implied. We are therefore of the opinion that the fund derived from sale of goods should be charged with the expenses attending its administration.

" The expenses incurred by the assignee were largely for rent of store, clerk hire, etc. The appraisement of the goods

occupied 22 days and required assistance in preparing for the appraisers. The appraisement of book accounts must have taken but little time. Upon a careful examination of the items of expense which the auditor has charged to the stock accounts, we find but one item which is not clearly due to that part of the business. This is the allowance for counsel fee, $500. We think a fair proportion of this should be charged to the general fund, say $250. As the stock does not fully pay the first judgments, and as they are entitled to pro rata with other creditors upon the general fund until paid, it makes no practical difference, but in order to make it accord with principle we charge that much to the general fund.

"This disposes also of exception eighth, which claims that both funds should have been paid on the executions in order.

"The 9th exception is that the auditor erred 'in surcharging the assignee with any sum whatever.' Tenth renews exceptions originally filed which are to the same effect.

"In the first report the auditor surcharged the accountant with $156 excessive payment to appraisers. He allowed them $1.00 a day for the time occupied, and $102 paid assistant in preparing the goods. The surcharge was certainly proper. He also surcharged allowance for watchmen, $127.50. These watchmen were first employed by the sheriff, and they remained some time after the agreement by which the goods were turned over to the assignee. The auditor allowed pay for ten days and surcharged the balance. In this we think he was right. But in this report he has made an error. In the first report he was dealing with a balance shown by the account. As these sums were improperly credited it could only be corrected by surcharging it, and thus increase the balance. In this report the auditor deals with funds as a whole, and deducts expenses to obtain a balance. In the matter of appraisers' fees he credits the whole amount paid, and it would be proper to place the excess on the other side. But he has also surcharged $127.50 excess of watchmen's pay, though he had taken it out of the costs, and $30.00 probate fee, to Schmidt, though it is not included in expenses, and $15.71 excess in commission, though he had already eliminated this by allowing the proper amount as credit. He also erred in surcharging these sums in the general fund, though the items were expenses in the stock account.

"This will be corrected by charging the accountant with the money received on each account allowing him credit for proper payments on each and distributing the balances.

"Some of the creditors filed exceptions to the allowance of commissions of the assignee as excessive. The charge allowed is five per cent. No evidence was offered to show how this is excessive. It does not appear to be.

"This disposes of all the exceptions filed."

The agreement referred to above provided:

"That the proceeds of the sale of said property and effects by said assignee shall be appropriated as follows, to-wit:

"(a) To the sheriff of Allegheny county to the amount of the debts, interest and costs upon said writs of execution, if a sufficient amount be realized from said sales.

"(b) Then any sum in excess of the debt, interest and costs on said writs shall be accounted for by said assignee as provided by law."

*Errors assigned* were (1–10) the dismissal of exceptions; (11–14) portions of opinion in brackets; (15) decree; quoting them respectively.

*A. M. Neeper*, for appellant.—The confession of judgments to Schmidt, trustee, for creditors, named therein by Dickson & Co., would of itself make Schmidt trustee and creditor of Dickson & Co. This was done prior to Feb. 20, 1890, and is a legal transaction: Guy v. McIlree, 26 Pa. 92; Miners Nat. Bank's Ap., 57 Pa. 199; Lake Shore Banking Co. v. Fuller, 110 Pa. 165.

Schmidt then being a creditor of Dickson & Co., prior to and on Feb. 20, 1890, an assignment of Dickson & Co. to him of any of their property absolutely or as collateral security for his debt, or the payment of his judgments, would be valid. Such an assignment is not within the terms of the acts of 1818 and 1843 relating to voluntary assignments, and would not be void if not recorded within thirty days: Chaffees v. Risk, 24 Pa. 434; Lockhart v. Stevenson, 61 Pa. 67; Wallace v. Wainwright, 87 Pa. 262; Vallance v. Ins. Co., 42 Pa. 441; Bank v. Carter, 38 Pa. 446; Mellon's Ap., 1 Grant, 212.

The transfer of the book accounts on Feb. 20, 1890, was not

an absolute conveyance to Schmidt, trustee, but merely a pledge
for the same as collateral security for his debt and the payment
of judgments confessed to him as trustee.   No such transfer is
within the acts of assembly relating to voluntary assignments
and it need not be recorded in 30 days to be valid: Griffin v.
Rodgers, 38 Pa. 382; Taylor v. Cornelius, 60 Pa. 187; Lock-
hart v. Stevenson, 61 Pa. 64; Beans v. Bullitt, 57 Pa. 225;
Wallace v. Wainwright, 87 Pa. 269; Ridgeway v. Stewart, 4
W. & S. 383; Bank v. Penna., 7 W. & S. 336; Johnson's Ap.,
103 Pa. 376.

There was no obligation on either the execution creditor or
the sheriff to permit the assignee to have anything to do with
the effects of Dickson & Co.   The assignee had no interest in
them except such as was subject to the superior rights of the
creditor and sheriff.

*Albert York Smith,* for appellees.—Schmidt was a general
assignee for the benefit of creditors: Act of April 17, 1843,
P. L. 273; Hodenpuhl v. Hines, 160 Pa. 466.

It would be manifestly unfair and unjust that the execution
creditors, having a lien on the stock in the store and none on
the book accounts, could by an agreement with the assignee
obtain the proceeds of this stock without any cost or expense
or assignee's commission, and compel the fund from the book
accounts to pay the entire expense of collecting both funds.

Per Curiam, Jan. 7, 1895:

In his opinion disposing of exceptions to the first report of
the auditor in this case, the learned judge held that the assign-
ment by Dickson & Co. of their book accounts to W. A.
Schmidt, executed within an hour before their general assign-
ment to appellant, was in effect a voluntary assignment for
the benefit of creditors, which, in the circumstances and under
the provisions of the act of April 17, 1843, P. L. 273, enured
to the benefit of all the creditors of appellant's assignors.   Said
act declares : " That all assignments of property in trust, which
shall hereafter be made by debtors to trustees on account of
inability at the time of the assignment to pay their debts, to
prefer one or more creditors (except for the payment of wages
of labor), shall be held and construed to enure to the benefit

of all the creditors in proportion to their respective demands; and all such assignments shall be subject in all respects to the laws now in force relative to voluntary assignments." In view of the undisputed facts upon which the question arose the learned judge was clearly right in holding as he did, and in recommitting the matter to the auditor, with instructions to make distribution in accordance with his opinion.

The auditor's second report, with schedule of distribution attached, was excepted to by appellant. In his second opinion disposing of these exceptions, the learned judge fully considered and correctly disposed of all the questions presented, including the main question,—as to the effect of the assignment of the book accounts to Schmidt,—which had been previously considered and decided.

It is unnecessary to consider the specifications of error in detail. There is nothing in either of them that would warrant a reversal or modification of the decree. All that need be said in relation to either of the questions involved will be found in the clear and convincing opinion of the court below. For reasons therein given we think there is no error in the decree.

Decree affirmed and appeal dismissed with costs to be paid by appellant.