[No. 2774.   Dec. 4, 1922.]

## BRYANT v. BOARD OF LOAN COMMISSIONERS OF NEW MEXICO et al.

### SYLLABUS BY THE COURT

Chapter 6, Laws 1921, in so far as it authorizes and directs the state board of loan commissioners to issue series C bonds of the state for the purpose of reimbursing the counties of Grant and Santa Fe and the town of Silver City for moneys paid by them, respectively, for interest and principal upon railroad aid bonds heretofore issued by them, and afterwards validated by Congress, is unconstitutional and

void because it authorizes a diversion from their original objects and purposes of the proceeds from lands granted by Congress in the Enabling Act and accepted by the people by the provisions of the state Constitution. The act of Congress of June 5, 1920, gives the consent of the government to such diversion of such proceeds, but a constitutional amendment must be had before the same can be effectuated.

Appeal from District Court, Santa Fe County; Ed Mechem, Judge.

Action by R. G. Bryant against the Board of Loan Commissioners of the State of New Mexico and others. From a judgment for plaintff, defendants appeal. affirmed.

W. B. Walton and Percy Wilson, both of Silver City, and C. J. Roberts, of Santa Fe, and H. S. Bowman, Attorney General, for the appellants.

J. O. Seth, of Santa Fe, for the appellee.

OPINION OF THE COURT

PARKER, C. J. In the year 1880 the county of Santa Fe, in the then territory of New Mexico, issued bonds in the sum of $150,000 in aid of the New Mexico & Southern Pacific Railroad Company. In 1891 Santa Fe county issued refunding bonds in the amount of $262,000 for the purpose of refunding the bonds issued in 1880. In 1887 the bonds of said county were issued in the further amount of $150,000 in aid of the Texas, Santa Fe & Northern Railroad Company; which bonds were refunded in 1892, and refunding bonds were issued in the amount of $172,300 for that purpose. Santa Fe county made payments of interest on these various bonds in the amount of $88,552.

Grant county on June 5, 1883, issued railroad aid bonds in the amount of $60,000, three of which bonds were in 1885 paid and retired. In 1902 this bond issue was refunded in the amount of $57,000. The interest on these bonds was paid by Grant county from time to time, so that at the time of the passage of the act of Congress of June 20, 1910, providing for the admission

of New Mexico as a state, there was no unpaid interest on the Grant county railroad aid bonds. After the issuance of said bonds Luna county was carved out of a portion of Grant county and debts of the parent county were apportioned in accordance with the taxable property, and Luna county assumed the payment of the appropriate part of the rairoad aid bonds, upon which the interest has been paid by Luna county. The same thing occurred when Hidalgo county was carved out of a portion of the remainder of what was originally Grant county, and a like apportionment of debts was made. The town of Silver City issued railroad aid bonds in the amount of $150,000, upon which it has paid the interest as it matured.

These bonds at the time of their issue were all invalid, because they were issued contrary to the restrictions imposed upon the Legislatures of territories by Congress. This condition of affairs was made manifest by a decision of the Supreme Court of the United States in Lewis v. Pima county, 155 U. S. 55, 15 Sup. Ct. 22, 39 L. Ed. 67. This case arose in Arizona, but the Pima county bonds occupied exactly the same legal status as those issued in New Mexico. By act of Congress of January 16, 1897 (29 Stat. L. 487), the bonds issued by Grant and Santa Fe counties and by the town of Silver City were validated, approved, and confirmed, and said counties and town were required to assume and pay the principal and interest on said bonds.

It is thus seen that these counties and this town had saddled upon them a debt which they had no power in the first instance to contract, and which can only be sustained upon the ground that Congress had plenary power over territories, and consequently might, if it saw fit, so provide. This was the conditions of affairs at the time of the passage of the act of June 20, 1910, 36 Stat. L. 557; Fed. Sat. Ann. Supp. 1912, p. 356). This is the act authorizing the admission of New Mexico and Arizona as states, and will be hereafter spoken of as the "Enabling Act." This act made extensive grants

of lands to New Mexico for various purposes, and, among other things, made the following provision in section 7 of the act:

" * * * And for the payment of the bnds and accrued interest thereon issued by Grant and Santa Fé counties, New Mexico, which said bonds were validated, approved, and confirmed by act of Congress of January sixteenth, eightteen hundred and ninety-seven (Twenty-Ninth Statutes, page four hundred and eighty-seven),one million acres: Provided, that if there shall remain any of the one million acres of land so granted, or if the proceeds of the sale or lease thereof, or rents, issues, or profits therefrom, after the payment of said debts, such remainder of lands and the proceeds of sales thereof shall be added to and become a part of the permanent school fund of said state, the income therefrom only to be used for the maintenance of the common schools of said state."

Section 2 of the act provides as follows:

"And said convention shall provide, by an ordinance irrevocable withoue the consent of the United States and the people of said state—* * *

"Third.    That the debts and liabilities of said territory of New Mexico and the debts of the counties thereof which shall be valid and subsisting at the time of the passage of this act shall be assumed and paid by said proposed state, and that said state shall, as to all such debts and liabilities, be subrogated to all the rights, including rights of indemnity and reimbursement, existing in favor of said territory or of any of the several counties thereof at the time of the passage of this act:    Provided, that nothing in this act shall be construed as validating or in any manner legalizing any territorial, county, municipal, or other bonds, obligations, or evidences of indebtedness of said territory or the counties or municipalities thereof which now are or may be invalid or illegal at the time said proposed state is admitted, nor shall the Legislature of said proposed state pass any law in any manner validating or legalizing the same.

*    *    *    *    *    *    *    *

"Ninth.    That the state and its people consent to all and singular the provisions of this act concerning the lands hereby granted or confirmed to the state, the terms and conditions upon which said grants and confirmations are made, and the means and manner of enforcing such terms and conditions, all in every respect and particular as in this act provided.

"All of which ordinance described in this section shall, by proper reference, be made a part of any constitution that shall be formed hereunder, in such terms as shall positively preclude the making by any future constitutional amendment or any change abrogation of the said ordinance in whole or in part without the consent of Congress."

The Constitution of the new state, in compliance with the requirement of the Enabling Act, provided in article 21 as follows:

"Sec. 3.    The debts and liabilities of the territory of New Mexico and the .debts of the counties thereof, which were valid and subsisting on the twentieth. day of June, nineteen hundred and ten, are hereby assumed and shall be paid by this state; and this state shall, as to all such debts and liabilities, be subrogated to all the rights, including rights of indemnity and reimbursement, existing in favor of said territory or of any of the several counties thereof on said date. Nothing in this article shall be construed as validating or in any manner legalizing any territorial, county, municipal or other bonds, warrants, obligations or claims against, said territory or any of the counties or municipalities thereof which now are or may be, at the time this state is admitted, invalid and illegal; nor shall the Legislature of this state pass any law in any ·manner validating or legalizing the same."

"Sec. 9.    This state and its people consent to all and singular the provisions of the said act of Congress, approved June twentieth, nineteen hundred and ten, concerning the lands by said act granted or confirmed to this state, the terms and conditions upon which said grants and confirmations were made and the means and manner of enforcing such terms and conditions, all in every respect and particular as in said act provided.

"Sec. 10.    This ordinance .is irrevocable without the consent of the United States and the people of this state, and no change or abrogation of this ordinance, in whole or in part, shall be made by any constitutional amendment without the consent of Congress."

The Constitution in section 4, art. 19, also contains the following provisions:

"When the United States shall consent thereto, the Legislature, by a majority vote of the members in each house, may submit to the people the question of amending any provision of article XXI of this Constitution on compact with the United States to the extent allowed by the act of Congress permitting the same, and if a majority of the qualified electors who vote upon any such amendment shall vote in favor thereof the said article shall be thereby amended accordingly."

It was further proveded in article 9 as follows:

"Sec. 1.    The state hereby assumes the debts and liabilities of the territory of New Mexico and the debts of the counties thereof, which were valid and subsisting on June twentieth, nineteen hundred and ten, and pledges its faith

and credit for the payment thereof. The Legislature shall, at its first session, provide for the payment or refunding thereof by the issue and sale of bonds, or otherwise.

"Sec. 2. No county shall be required to pay any portion of the debt of any other county so assumed by the state, and the bonds of Grant and Santa Fé counties which were validated, approved and confirmed by act of Congress of January sixteenth, eighteen hundred and ninety-seven, shall be paid as hereinafter provided.

"Sec. 3. The bonds authorized by law to provide for the payment of such indebtedness shall be issued in three series as follows:

"Series A. To provide for the payment of such debts and liabilities of the territory of New Mexico.

"Series B. To provide for the payment of such debts of said counties.

Series C. To provide for the payment of the bonds and accrued interest thereon of Grant and Santa Fé counties which were validated, approved and confirmed by act of Congress, January sixteenth, eighteen hundred and ninety-seven.

"Sec. 4. The proper officers of the state shall, as soon as practicable, select and locate the one million acres of land granted to the state by Congress for the payment of said bonds of Grant and Santa Fé counties, and sell the same or sufficient thereof to pay the interest and principal of the bonds of series C issued as provided in section three hereof. The proceeds of rentals and sales of said land shall be kept in a separate fund and applied to the payment of the interest and principal of the bonds of series C. Whenever there is not sufficient money in said fund to meet the interest and sinking fund requirements therefor, the deficiency shall be paid out of any funds of the state not otherwise appropriated, and shall be repaid to the state or to the several counties which may have furnished any portion thereof under the general levy, out of the proceeds subsequently received or rentals and sales of said lands.

"Any money received by the state from rentals and sales of said lands in excess of the amounts required for the purposes above mentioned shall be paid into the current and permanent school funds of the state respectively."

The first state Legislature by chapter 16, Laws 1912, made provision for the issuance of bonds of the state to take up and retire the Grant and Santa Fe county bonds, and in section 11 the purpose of that act is declared as follows:

"To provide for the payment or refunding of the bonds and accrued interest thereon, of Grant and Santa Fé counties which were validated, aproved and confirmed by act of Congress of January 16, 1897, and which accrued interest

thereon is evidenced by matured and unpaid interest coupons and by unpaid valid and subsisting judgments recovered for' pastdue principal and interest coupons of such bonds, which bonds and accrued interest thereon were assumed by the state of New Mexico under and pursuant to the provisions of its Constitution."

Under this act bonds have been issued for all of the Santa Fe and Grant county bonds and the interest thereon that was unpaid on June 20, 1910. At the same session of the Legislature a second act was passed (Laws 1912, c. 71) authorizing and directing the board of loan commissioners to issue bonds to reimburse the counties of Grant and Luna for the amounts paid by them as principal and interest on the said railroad aid bonds. At the suit of the United States the late Judge Pope held this act to be invalid on the ground that the grant of lands in the Enabling Act was to pay the subsisting debts of the counties and not interest or principal which had in fact been paid by them.

On June 5, 1920, an act of Congress (chapter 236, 2d Sess. 66th Cong. p. 947) was passed as follows:

"Be it enacted by the Senate and House of Representatives of the United States of America in Congress Assembled, that the authority and consent of Congress is hereby granted to the state of New Mexico to apply any part of the proceeds of the grant to said state of one million acres of land made by section 7 of the Enabling Act of June 20, 1910 (Thirty-Sixth Statutes, page 557), for the reimbursement of Grant, Luna, and Hidalgo counties for interest paid by said counties on the bonds of Grant county, and for the reimbursement of the bonds of Santa Fé county, which said bonds were validated, approved, and confirmed by act of Congress of January 16, 1897 (Twenty-Ninth Statutes, page 487), and also for the payment of the principal of the bonds issued by the town of Silver City and likewise validated by said act of January 16, 1897, and to reimburse the town of Silver City for interest paid by said town on said bonds, all in addition to the obligations provided in said Enabling Act to be paid from the proceeds of said grant."

Thereafter chapter 6, Laws of 1921, the validity of which is now in question, was passed by the state Legislature. That act makes provision for the issuance of bonds for the amount of principal and interest which had theretofore been paid upon these railroad aid bonds

by the said counties and the said town of Silver City. It will be observed in this connection that the Enabling Act and the provisions of the state Constitution refer only to the bonds of Santa Fe and Grant counties. The bonds of the town of Silver City are mentioned in neither of these instruments and are first mentioned in the act of Congress of June 5, 1920, and chapter 6, Laws of 1921.

The board of loan commissioners of the state had ascertained the amounts of interest and principal which had been paid by these counties and this town upon the said railroad aid bonds and refunding bonds issued to take up and retire the original issues, and were proceeding to issue series C bonds of the state in the amount of such payments under the provisions of said chapter 6, Laws 1921, when appellee, as a taxpayer, on behalf of himself and others similarly situated, brought this suit to enjoin the issuance of said bonds upon the ground that said chapter 6, Laws 1921, was unconstitutional and void, in that it was in violation of the parts of the Enabling Act and the state Constitution heretofore referred to. A demurrer was interposed to the complaint by the appellants, setting up that the complaint failed to state a cause of action for various reasons. The demurrer was overruled, and, appellants electing to stand on the same, a final judgment was entered perpetually enjoining appellants from issuing said bonds, from which judgment this appeal was taken.

Looking broadly at the subject-matter of this legislation, there is no reason why Congress should not have dedicated the lands granted in the Enabling Act to the reimbursement of the counties and town for interest and principal which had been paid by them, respectively, the same as it did to pay off amounts still due from them. As before mentioned, all of these bonds were illegal when issued. It was only by virtue of the subsequent act of Congress that they became valid obligations. The failure of Congress to provide for the reimbursement of sums paid as interest and

principal by these counties and this town was evidently
due to a misapprehension of the facts.    This appears
from the report of the Senate Committee on territories
(Report No. 454, Sixty-First Congress, Second Session),
which it is stated:

"For a very brief time the people of these counties paid
the interest on these bonds; but when one suit, hereinafter
referred to, was brought to test the validity of similar bonds
issued by certain counties of Arizona, the people of the New
Mexico counties refused to pay further interest on their
bonds, and have not paid any interest on them since—not
even after Congress, by special act, made said bonds valid.
No reason was given for not paying the interest on these
bonds; the authorities merely refused to levy taxes to pay
them.    Therefore the debt has grown until at the present
time it is almost $1,000,000."

It appears from this Senate committe report that
Congress was under the impression that practically no
interest had been paid upon these bonds, and that no
principal had been paid. Had Congress been acquainted
with the real facts in the case, it would have provided,
no doubt, as it afterwards did provide by act of June
5, 1920, heretofore quoted, for the reimbursement of
these counties and town for moneys which had been
actually paid by them.  If section 7 of the Enabling
Act stood alone and was the only test to be applied to
this question, it might well be that the grant of lands
to pay "bonds and accrued interest theron" meant the
principal and interest which had been earned on the
bonds, regardless of whether that interest or principal
had been paid by the various counties involved.  But
all of this legislation must be interpreted together, and
it appears throughout the remainder of the Enabling
Act and in the state Constitution that the grant was
made for the payment of the valid  and  subsisting
debts of the counties, and was not intended to be a re-
imbursement statute, as is contended for by appellants.
It was not intended to be a reimbursement statute be-
cause Congress was under the impression that there
was no reimbursement, or practically none, to be made
to these counties.   Throughout  the  Legislation the
words "debts and liabilities" are used, which neces-

sarily characterize the nature and scope of the grant and show that the act was intended by Congress to cover debts and liabilities only; Congress believing at that time that there was practically no reimbursement to be made. The words "debts and liabilities" are understood by all. The meaning of the words "debts and liabilities" under this legislation was considered in State ex rel. Beach v. Board of Loan Commissioners, 19 N. M. 266-275, 142 Pac. 152, and it was there pointed out that a debt is a sum of money due by certain and express agreement. In the case at bar interest had been paid to the holders of th bonds, and likewise principal, and the debt had to that extent been discharged. It had ceased to exist as a debt upon payment. This is the line of argument adopted by the late Judge Pope in U. S. v. Marron, above referred to, and we believe the same is clearly sound. This is evidently the view which Congress takes of the proper interpretation of the Enabling Act. In the act of June 5, 1920, Congress merely gives its assent to the application of the proceeds of this land grant to the reimbursement of those counties, using language entirely absent in any of the previous legislation on this subject, and in fact recognizing in terms that it is changing the purposes of the grant from its original scope. In this connection we are referred to Boyce v. Pima County (Ariz.) 208 Pac. 419, as holding the contrary doctrine. This case is authority for the contentions of appellants that the Enabling Act and the grant of land therein of 1,000,000 acres was intended as a reimbursement statute for all sums that may have been paid on account of bond issues of this character. There is a possible distinction between the Arizona case and this one in that the county debts in Arizona had been refunded by the issuance of territorial bonds, and this may account for the different conclusion reached there.

Appellants contend that, even admitting the soundness of our conclusion thus far arrived at, the Legislature of the state has power to accept the new grant by

Congress made by the act of June 5, 1920, above quoted. In this, however, they are clearly in error. Thus in a portion of section 2 of the Enabling Act it is to be seen that Congress contemplated that any change in regard to the use of the proceeds of the lands granted to the state should be effectuated by amendment to the Constitution, and the Constitution, in section 10 of article 21, provides that the ordinance accepting these grants of land is to be irrevocable without the consent of the United States and the people of the state, and article 19 of the Constitution provides the method whereby any change in the use and application of the proceeds of these land grants may be effectuated, and prescribes that it shall be done by way of a constitutional amendment. We now have the consent of Congress to change the application of these proceeds, but we have not a constitutional amendment whereby the same can be carried into effect. In this lies the fatal defect in the position taken by appellants.

Some other minor contentions are made by the parties, but, inasmuch as the foregoing considerations would seem to control the decision in this case, they will not be considered.

The result reached in this case operates as a great injustice upon Grant and Santa Fe counties and the town of Silver City. The debts were invalid when contracted. Congress recognized this when it passed the Enabling Act and recognized the moral obligation of the government to pay these debts. Had it been advised that there was reimbursement to be made, it would doubtless have so provided, as it has since signified its assent thereto by the act of June 5, 1920. There would seem to be two remedies for the situation— either a constitutional amendment, or a further grant by Congress of sufficient lands to effect this reimbursement. The latter course would seem to be preferable, as action under the former course would have the effect of depleting the endowment now belonging to the common schools of the state.

It follows from all of the foregoing that the judgment of the district court was correct, and should be affirmed; and it is so ordered.

BARNES, J., concurs.