UNITED STATES v. SWOPE, State Commissioner of Public Lands, et al.

(Circuit Court of Appeals, Eighth Circuit. November 27, 1926.)

No. 7247.

1. Trusts ⬅236—Trustee is entitled to reimbursement for expenses incurred.

In the absence of provision to the contrary in the instrument, or a statute creating an express trust, the trustee has an inherent equitable right to reimbursement from the trust for all charges and expenses incurred in execution of the trust.

2. Public lands ⬅65—Exclusion or inclusion in grants of lands to states in trust of provisions for expense of administration held not conclusive as to grant containing no expression thereon.

In grants by Congress of lands to the states in trust for designated purposes, the inclusion in some grants of authority to pay expenses of administration from the trust fund and its denial in other grants is not decisive of the meaning of a grant in which there is no expression on the subject.

3. Public lands ⬅65—Provision of New Mexico statutes for payment of expenses of management and sale of public lands held not in violation of trusts created by congressional grants (Code 1915, §§ 5183, 5184).

Code N. M. 1915, §§ 5183, 5184, providing that 20 per cent. of the income derived from state lands shall constitute a state lands maintenance fund, from which salaries and expenses of the state land office shall be paid, held not in violation of the trust created by the grants of land to the state for various purposes by the Enabling Act, which contain no provision on the subject of payment of costs of administration.

Appeal from the District Court of the United States for the District of New Mexico; Colin Neblett, Judge.

Suit in equity by the United States against Edwin B. Swope, Commissioner of Public Lands of the state of New Mexico, and others. Decree for defendants, and complainant appeals. Affirmed.

John W. Wilson, U. S. Atty., of Albuquerque, N. M. (H. S. Bowman, Asst. U.

S. Atty., of Santa Fé, N. M., on the brief), for the United States.

Sam G. Bratton, of Santa Fé, N. M. (Fred E. Wilson, of Albuquerque, N. M., and William A. Gillenwater, of Clovis, N. M., on the brief), for appellees.

Before LEWIS, Circuit Judge, and MUNGER and FARIS, District Judges.

MUNGER, District Judge. This is an appeal from a decree denying the plaintiff's application for a permanent injunction. The United States, as plaintiff, brought a suit, alleging that the United States had granted to New Mexico a large quantity of the public lands, in trust for designated purposes, and that the defendants, as state officers, were making expenditures, in violation of the trust, out of the funds derived from these lands. The defendants admitted the expenditures, but denied a violation of the trust. The case was submitted to the court upon the pleadings, and the court found that the expenditures were lawful, and dismissed the bill, which had prayed for an injunction against the further use of the funds.

The use, of which the plaintiff complained, was authorized by the statutes of New Mexico. Sections 5178–5264, Stats. Ann. New Mexico, 1915. By this act, a state land office was created, in charge of an officer known as the commissioner of public lands, intrusted with the management and disposition of the lands owned by the state. By section 5183, 20 per cent. of the income derived from any state lands (except certain lands granted by an act of Congress for the payment of bonds issued by Grant and Santa Fé counties) was constituted a fund, known as the "state lands maintenance fund." By section 5184, all salaries and expenses of the state land office are to be paid from the state lands maintenance fund. The plaintiff's bill complains that, out of the funds derived from these lands, expenditures have been made for an audit of the accounts of the commissioner of public lands, for the purchase of an automobile for his use, for furniture, fixtures, and supplies for his office, for advertising in newspapers, for cruising of forest lands owned by the state, for expenses of officers in attending meetings, and for the fees of attorneys appearing on behalf of the state officers in this suit. It should be noted that there is no claim that any of these expenditures are excessive, nor that they were not for the benefit of the lands granted or the fund derived from them. The plaintiff's claim is that the lands were granted by the United States to the state of New Mexico

for designated uses, and that the state cannot legally use any portion of the lands or their proceeds for the purpose of paying any expense of the administration of the trust.

By the Act of Congress approved June 21, 1898 (30 Stat. 484) a grant was made to the territory of New Mexico of a large amount of public lands for designated purposes. Provision was made therein for the leasing of some of this land and for the sale of other portions, and an express authorization was made for the payment, out of the proceeds of the leases or sales, of the costs and expenses incurred in the leasing, sale, management, and protection of the lands and leases (section 10). On June 20, 1910, Congress passed an act (36 Stat. 557) to enable the people of New Mexico to form a state, and in pursuance of this act a state was formed and admitted into the Union. In this act a further grant of public lands was made for purposes named, a confirmation was given of some prior grants, and provisions for some prior grants were repealed. Section 10 of this act contains this provision:

"A separate fund shall be established for each of the several objects for which the said grants are hereby made or confirmed, and whenever any moneys shall be in any manner derived from any of said land the same shall be deposited by the state treasurer in the fund corresponding to the grant under which the particular land producing such moneys were by this act conveyed or confirmed. No moneys shall ever be taken from one fund for deposit in any other, or for any object other than that for which the land producing the same was granted or confirmed. The state treasurer shall keep all such moneys invested in safe interest-bearing securities, which securities shall be approved by the Governor and secretary of state of said proposed state, and shall at all times be under a good and sufficient bond or bonds conditioned for the faithful performance of his duties in regard thereto as defined by this act and the laws of the state not in conflict herewith.

"Every sale, lease, conveyance, or contract of or concerning any of the lands hereby granted or confirmed, or the use thereof or the natural products thereof, not made in substantial conformity with the provisions of this act shall be null and void, any provision of the constitution or laws of the said state to the contrary notwithstanding.

"It shall be the duty of the Attorney General of the United States to prosecute in the name of the United States and its courts

such proceedings at law or in equity as may from time to time be necessary and appropriate to enforce the provisions hereof relative to the application and disposition of the said lands and the products thereof and the funds derived therefrom."

[1] There was no express provision in this act of Congress authorizing the payment of any expenses of the state in the management of the lands or its proceeds. The plaintiff claims (1) that the Act of June 20, 1910, superseded the Act of June 21, 1898, so that the lands granted are held under the terms of the Enabling Act and not under the terms of the prior act; (2) and that the absence of a provision in the Enabling Act authorizing the payment of expenses incurred, when such a deduction was permitted in the prior act, and (3) the enumeration of the specific purposes for which the grant was made, manifest the intention of Congress that no expenses of the state might be charged against the land or its proceeds. It is conceded that the grant of lands was upon an express trust. The rule of construction of such trusts is that the absence of a provision for the payment of the reasonable and proper costs and expenses of administering the trust does not throw such expense upon the shoulders of the trustees, but the trustees have an inherent equitable right to be reimbursed for such expenses incurred. In Worrall v. Harford, 8 Ves. Jr. 2, 8, Lord Eldon said:

"It is in the nature of the office of a trustee, whether expressed in the instrument or not, that the trust property shall reimburse him all the charges, and expenses incurred in the execution of the trust."

In Attorney General v. Mayor of Norwich, 2 My. & Cr. 406, 424, 40 Eng. Rep. 702, Lord Cottenham said:

"Independently of the provisions of this section, I apprehend it to be quite clear, according to the rule which applies to all cases of trust, that if necessary expenses are incurred in the execution of a trust, or in the performance of the-duties thrown on any of the parties, and arising out of the situation in which they are placed, such parties are entitled, without any express provision for that purpose, to make the payments required to meet those expenses out of the funds in their hands belonging to the trust. Such is the rule of this court, and such also is the rule at common law. The cases of The King v. Inhabitants of Essex, 4 T. R. 591, and The King v. Commissioners of Common Sewers, 1 Barn. & Adol. 232, establishing the principle at law, are more applicable to this question than most of the cases in this court usually referred to as authorities upon this subject. The defendants in those two cases were public officers, who having public duties to perform, under the authority of acts of Parliament, were held to be entitled to pay expenses legitimately and properly incurred, out of the funds of which they were by acts of Parliament constituted trustees. The rule, therefore, both at law and in this court, certainly does not require any special provision to be made for the case, provided the expenses are such as have been legitimately and properly incurred by the persons intrusted with the administration of the fund."

This is the general rule of the English courts (Heriots Hospital v. Ross, 12 Cl. & Fin. 507, 512, 515; Godfrey v. Watson, 3 Atk. 517, 518; Caffrey v. Darby, 6 Ves. Jr. 488, 497; How v. Godfrey, Finch's Reports, 361, 362; In re Ormsby, 1 B. & B. 189, 190; Lewin on Trusts [11th Ed.] 770), as well as of the courts of this country (Trustees v. Greenough, 105 U. S. 527, 532, 26 L. Ed. 1157; Central Railroad v. Pettus, 113 U. S. 116, 123, 5 S. Ct. 387, 28 L. Ed. 915; Meddaugh v. Wilson, 151 U. S. 333, 343, 14 S. Ct. 356, 38 L. Ed. 183; Tevander v. Ruysdael (C. C. A.) 299 F. 746, 748; 3 Pom. Eq. Jur. (3d Ed.) §§ 1084, 1085; 2 Perry on Trusts [6th Ed.] § 910).

The trust was imposed upon New Mexico by the act of Congress, but the same rule of construction applies to both public and private grants. "The best construction of a statute is to construe it as near to the rule and reason of the common law as may be, and by the course which that observes in other cases. Where a statute directs anything to be done generally, and does not appoint any special manner, it is to be done according to the course of the common law." 2 Suth. Stat. Const. (2d Ed.) §§ 454, 455: "In the construction of the laws of Congress, the rules of the common law furnish the true guide." Rice v. Railroad Co., 1 Black, 358, 374, 17 L. Ed. 122. United States v. Sanges, 144 U. S. 310, 311, 12 S. Ct. 609, 36 L. Ed. 445; Potter's Dwarris on Statutes, 185; 36 Cyc. 1145.

The question involved, so far as it relates to grants of public lands made to the states, has not often been before the courts, but it was presented in the case of State ex rel. Greenbaum v. Rhoades, 4 Nev. 312, 315, 317. The United States, by the Act of July 2, 1862 (12 Stat. 503), granted to the several states a portion of the public lands for the use of colleges engaged in teaching agriculture and the mechanic arts, and the benefits

of this grant were extended to Nevada by the Act of July 4, 1866 (14 Stat. 85) with authority to establish a school for the teaching of the theory and practice of mining. In these acts there was a requirement that the state should pay all the expenses of the management of the lands and of the moneys received from the sale of the lands, so that the entire proceeds of the sale should constitute a perpetual fund to be applied to the purposes of the act, without any diminution. On March 21, 1864 (13 Stat. 30), Congress passed an act to enable the people of Nevada to form a state, and therein granted other portions of the public lands in aid of the common schools, for the erection of public buildings, for the making of public roads, and for the construction of canals and ditches for irrigation purposes. The question presented to the court was the right of the state to pay the expenses of the state land office out of school funds derived from the grant by Congress of March 21, 1864. The court said:

"Taking, then, all the acts of Congress into consideration, it would seem that the state stands in the situation of an ordinary trustee as to all these lands, except the ninety thousand acres granted for the purpose of establishing an agricultural or mining college. In regard to this particular grant, the state has assumed not only the burdens of an ordinary trustee, but has also undertaken to bear the expense of converting the trust land into interest-bearing bonds, without calling on the trust fund for reimbursement. In other cases, where the state stands in the place of an ordinary trustee, there could be but little doubt that she would have the right to make the trust land bear the expense of conversion into stocks or other interest-bearing funds, unless there is something in our own Constitution requiring the Legislature to pay the expenses of this conversion out of other funds. * * *

"In holding that the Legislature may use a part of the proceeds of the land granted to this state to make the remainder available, we refer to other lands than the 90,000 acres granted to establish an agricultural or mining college. So far as these 90,000 acres are concerned, the Legislature, by the terms of its compact with the general government, must provide the means from its ordinary sources of revenue to pay the expenses of selling the same and investing the proceeds in bonds. In the meantime the state may select all its other lands, and the cost of selecting and selling those lands, the proceeds of which, when sold, go into the school fund,

may be paid by warrants drawn on and payable out of the common school fund."

The same question arose in the case of Betts v. Commissioners of Land Office, 27 Okl. 64, 68, 110 P. 766. An Act of Congress approved June 16, 1906 (34 Stat. 267), enabling the people of Oklahoma to form a state, contained a grant to the state of public lands for the use of certain schools, public institutions and buildings, and contained no provision as to the payment of the expenses of managing the lands or its proceeds. The court held that the moneys derived from the sale or lease of some of these lands could be used to pay the expenses of the sale or lease of the lands and of loaning or investing the funds, because the act making the grant did not forbid the payment of the expenses out of the funds. The court said:

"1. Sections 7, 8, and 9 of the Enabling Act of Nevada (4 Thorp's Fed. Charters, p. 2399; Act of March 21, 1864, c. 36, 13 Stat. 32) are substantially the same as sections 8, 9, 10, 11, and 12 of the Enabling Act of Oklahoma. In State of Nevada v. Rhoades, 4 Nev. 312, it was held in a similar case that, except where there was a specific provision binding the state to provide the means from its ordinary sources of revenue to pay the expenses of administering such trust, such expenses might be taken from the trust fund. See, also, to the same effect, Superintendent of Public Instruction v. Auditor of Public Accounts, 97 Ky. 180, 30 S. W. 404. We conclude that there is nothing in the terms of the grant of the Enabling Act preventing the appropriation of a portion of the proceeds to the payment of the expenses of the sale or leasing of the same. See, also, In re Dickson et al., 166 Pa. 134, 30 A. 1032; Wheeler & Wilson Mfg. Co. v. Winnett, 3 Neb. (Unof.) 293, 91 N. W. 514; In re Curtis' Will, 61 Hun, 372, 16 N. Y. S. 180."

[2] The argument is presented in this appeal that Congress must have intended that none of the lands or its proceeds should be used for expenses of administration, because no express authority was given for such use in the Enabling Act, while such a permission had been expressed in the prior grant. The same situation was presented in State ex rel. Greenbaum v. Rhoades, supra. In some grants of public lands to the states there has been an express prohibition of the use of the principal fund for any other than a designated purpose, and a requirement that the principal of the fund shall be kept undiminished. The inclusion of such a permitted use, or the denial of such a use contained in other congressional grants, is not decisive of the mean-

ing of a grant, in which no expression is found upon the subject.

[3] The appellant places special reliance upon the cases of United States v. Ervien (C. C. A.) 246 F. 277, affirmed in 251 U. S. 41, 44, 40 S. Ct. 75, 64 L. Ed. 128, Lake Arthur Drainage Dist. v. Field, 27 N. M. 183, 199 P. 112, and Bryant v. Board of Loan Commissioners, 28 N. M. 319, 211 P. 597, but none of these cases are regarded as applicable to the question presented on this appeal.

In the Ervien Case the subject of decision was the validity of an act of Legislature of the state of New Mexico (Laws 1915, c. 60, § 1), authorizing the state commissioner of public lands to expend 3 per cent. of the annual income from sales and leases of lands granted to New Mexico under the Enabling Act, for the purpose of "making known the resources and advantages of this state generally and particularly to home seekers and investors." The expenditure authorized was not in aid of the administration of the trust funds, but was for the supposed benefit of all lands and property within the state. In the Lake Arthur Darinage District Case, it was held that there was no power in the state to charge the expense of improving these lands granted to the state, to the funds derived from the leasing of the lands, but the court said:

" * * * It requires no argument to demonstrate that the state would have the power to protect the grant of lands and to charge the expense of such protection to the trust fund. But the charges sought to be imposed upon the trust estate in this case, so far as the record discloses at least, were not incurred for the protection of the land. The drainage law, the act which authorizes the state to pay its proportionate cost of drainage, proceeds upon the theory of benefits or rather improvement of the property and a promotion of agricultural interests."

The Bryant Case held that the state Legislature was without power to reimburse two counties and a town in New Mexico for moneys paid on bonds which they had issued, because the act in violation of the state Constitution, authorized a diversion of the proceeds of the lands granted by the Enabling Act, from the objects stated in that act, after the state had accepted the terms and conditions of the grant, by its Constitution.

Counsel have furnished us with a copy of an opinion by the Supreme Court of New Mexico in the case of Asplund v. Hannett, dated December 21, 1925, and of a later opinion by that court upon a rehearing in the same case, dated August 16, 1926, 249 P. 1074. It is said that the case has not been officially reported. In the first opinion it was held that the fund known as the "permanent water reservoirs for irrigating purposes fund," derived from a part of the grant made by Congress to the state, could not be used for the payment of the expenses of investigation and litigation necessary for the protection of the rights of New Mexico in the waters of the Rio Grande river as against Colorado, although it was authorized by an act of the Legislature, because the use was a violation of the terms of the grant. In the later decision, upon a rehearing, it was held that the plaintiff in the case did not have the capacity to sue for the relief for which he prayed, and the appeal was dismissed, and the former opinion was withdrawn. So far as the former opinion may tend to support the position of the appellant in this case, it is deemed not to be in harmony with the general rule of construction of the terms of such trusts as are here involved.

By the grant in question, over 12,000,000 acres of public land were conveyed or confirmed to the state of New Mexico. There are eight states in the Union, each of which comprises a less area than this grant. The land granted is scattered over the entire state of New Mexico, including four separate sections in each township, which were granted in aid of the common schools. The act of Congress provides that a large portion of the lands may be leased by the state, but may not be sold. It appears that some of the land is suitable for agriculture, other for mining, and other for timber, and much of it is found in mountainous or arid regions. It is obvious that large expenditures must be made in the examination, protection, control, sale, and leasing of this land, and in the control of the proceeds of the land and of the several funds in which it must be kept. It must be presumed that Congress was aware of the heavy burden of expense that would be required in the management of these grants, and that it also had knowledge of the settled rule for the construction of such statutes, that where no provision is made in the granting of the trust estate, relating to the expense of administering the trust, the necessary expenses of executing the trust may be paid out of the trust estate. The conclusion is that the plaintiff's bill, as it was finally submitted to the court, did not show any violation of the terms of the grant made by Congress to New Mexico in the Enabling Act, nor any violation of the trust expressed in that act. Because of this conclusion, it is not necessary to consider the question, whether the lands

granted to the state under the Act of June 21, 1898, are still held under the terms of that act, including the provisions thereof by which certain expenses of administration may be paid from the proceeds of the lands granted, or are held under the terms of the Enabling Act.

The decree of the District Court will be affirmed.